**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Willie Lee BROWN, Defendant-Appellant.**

No. 76–3927
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 4, 1977.

Harry Silverman, Savannah, Ga. (Court-appointed), for defendant-appellant.

---

* Rule 18, 5 Cir., see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir. 1970, 431 F.2d 409, Part I.

R. Jackson B. Smith, Jr., U. S. Atty., John J. Czura, Asst. U. S. Atty., Augusta, Ga., for plaintiff-appellee.

Before AINSWORTH, MORGAN and GEE, Circuit Judges.

PER CURIAM:

Appellant Brown, along with Fooshea Miller and Curtis Coleman, was indicted on six counts of interstate transportation of falsely made and forged securities, i. e., checks. Appellant was tried separately and found guilty of aiding and abetting the check cashing scheme on all six counts. Appellant's story was that he agreed to drive Miller and Coleman to Georgia from South Carolina in return for which they would pay his expenses. The trip took place on May 27, 1976. On the preceding day appellant and Miller went to Allen University in Columbia, South Carolina, where they obtained false I.D. cards. Miller took the name of Kenneth P. Hankerson, and appellant used the name Larry Hazel. Appellant borrowed a Mustang automobile from one Shirley Williamson to make the trip.

Testimony at trial established that Miller, using the name Hankerson, went to various banks in Savannah, Georgia, armed with a forged check. He would open a savings account in that name, deposit a portion of the check, then take the remainder in cash. He also purchased stereo equipment in the same manner at two different stores. Appellant drove Miller and Curtis to the banks and the stores. He looked at stereo equipment with Miller. On May 28, a bank officer who had seen the Mustang and its occupants earlier at another branch of the bank became suspicious. The bank refused to cash the check. Later that day another bank employee, Mr. Taylor, saw the car leaving Savannah. He followed the car and flagged down a highway patrolman. Mr. Taylor told the policeman that the men in the car were wanted by the Federal Bureau of Investigation in a check cashing scheme.

While following the car, the patrolman confirmed that the FBI wanted the occupants of the car. When he stopped the car, the stereo equipment was visible. Appellant and his companions were arrested and taken to the county jail. The FBI arrived later in the day.

Agent McCleary testified that he identified himself to appellant and stated the purpose of the interview. He advised appellant of his rights, at which time appellant stated he wanted to see an attorney. McCleary then asked appellant if he would consent to a search of the vehicle. Appellant signed a consent to search form. Appellant then made a spontaneous statement, "You all have me, there's nothing I can say, other than I'm ready to go to jail. I don't know where those checks came from." A search of the vehicle revealed a number of checks, deposit slips, the false I.D. cards, and the stereo equipment. Miller had $500 in cash, and Coleman had $1017 in cash.

Expert testimony at trial revealed the process by which the checks were sent for collection through the mail and across state lines. A fingerprint expert identified appellant's fingerprints on one of the checks that had not been negotiated. Fingerprints of the codefendants were found on other checks.

Appellant's story was that when he discovered the check cashing scheme he started back to South Carolina. He appeals on the basis that the court erred in admitting the evidence of the check cashing at the various banks as not relevant to him. He argues the court's charge was erroneous and that there was insufficient evidence that he aided and abetted the scheme.

Appellant objected to the admission of the checks that had been negotiated and those that were found in the car as a result of the search. He also objected to the expert's testimony as to how the checks were collected. Appellant argues the evidence was not relevant to him since he was not shown to have forged any signatures nor to have negotiated any of the checks. He argues the evidence was prejudicial and

violated Federal Rules of Evidence Rule 403. Rule 403 leaves the decision as to admission of relevant evidence to the trial judge.

 The rule in this circuit is that the trial court's rulings on relevancy and materiality of evidence will not be disturbed absent a clear showing of an abuse of discretion. *United States v. Isaacs,* 516 F.2d 409 (5th Cir. 1975). This rule has been continued under the new Federal Rules of Evidence. Evidentiary decisions as to the admissibility of evidence should not be disturbed except for abuse of discretion. *United States v. Bailey,* 537 F.2d 845, 846 (5th Cir. 1976). The evidence here was the stolen checks. Appellant's fingerprint was found on one of them. The evidence was clearly relevant to prove that appellant had knowingly transported falsely made checks in interstate commerce. The court did not abuse its discretion in admitting the evidence.

 Appellant next alleges the court's charge was confusing, misleading and incorrect. He argues that the court erred in instructing on both reasonable doubt and circumstantial evidence. Appellant did not object to the court's charge at the time; thus, the charge is governed by the plain-error rule. Fed.R.Crim.P. 52(b). *United States v. Helms,* 467 F.2d 1085 (5th Cir. 1972). Appellant misconstrues the holding in *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). The Court there held it was not error to instruct on both reasonable doubt and circumstantial evidence. Appellant's tendered circumstantial evidence charge is incorrect. The rule has long been that the evidence must be such that a *jury* could conclude that it is inconsistent with every reasonable hypothesis of innocence. *United States v. McGlamory,* 441 F.2d 130 (5th Cir. 1971). When the court's charge is reviewed as a whole, there was no error. *See United States v. Muncy,* 526 F.2d 1261 (5th Cir. 1976); United States v. Wells, 506 F.2d 924 (5th Cir. 1975).

 Appellant's final contention is that there was insufficient evidence that he knowingly transported in interstate commerce falsely made securities. He argues he was merely an innocent driver. Appellant took the stand and admitted that he agreed with Coleman and Miller to drive them to Georgia in return for his expenses and other payment. He admitted obtaining a false I.D. card the day before the trip. Though his testimony is not clear, he said he saw the checks both going to Georgia and coming back. He handled the checks. He stated to the FBI that he was ready to go to jail, but that he didn't know where the checks came from. He admitted driving his codefendants on their check-cashing rounds.

"Aiding and abetting means to assist the perpetrator of the crime. *United States v. Williams,* 341 U.S. 58, 71 S.Ct. 595, 95 L.Ed. 747 (1951). To be an aider and abettor requires that a 'defendant associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seeks by his action to make it succeed.'" *United States v. Anthony,* 474 F.2d 770, 773 (5th Cir. 1973). Taking the view most favorable to the government and drawing all reasonable inferences therefrom, there was sufficient evidence that appellant aided and abetted the crime charged. *See Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

Appellant's allegations of error in the admission of certain evidence, error in the court's charge, and lack of evidence are without merit. The judgment of the district court is AFFIRMED.