UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph MARINO, Defendant-Appellant.

No. 76–4400
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 10, 1977.

Rehearing and Rehearing En Banc
Denied Dec. 12, 1977.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

George D. Gold, Miami, Fla., for appellant.

Jack V. Eskenazi, U. S. Atty., Stephen M. Pave, Asst. U. S. Atty., Miami, Fla., for appellee.

Before BROWN, Chief Judge, and CLARK and HILL, Circuit Judges.

BROWN, Chief Judge:

Appellant was convicted on a one count indictment charging him with conspiracy to import marijuana in violation of 21 U.S. C.A. §§ 952(a) and 963. He argues that the trial court erred in allowing the government to reopen its case-in-chief and that the trial court's instructions to the jury were erroneous. We disagree and affirm.

Appellant was one of a group of several allegedly involved in a conspiracy to import marijuana from Jamaica into the United States. Government agents and the owner of M/V ADVENTURER III on which the marijuana was to be smuggled worked together to set up the arrest of the coconspirators, which took place on March 8, 1973, off the coast of Jamaica. Except for appellant, all of the coconspirators were present and arrested at this time. They entered a

plea of *nolo contendere* and were sentenced to prison for various terms. Appellant was not arrested until approximately three years later.

■ The government alleged in the indictment three overt acts in furtherance of the conspiracy, all of which were perpetrated by one of appellant's coconspirators.[1] They were that (i) on or about January 21, 1973, William Michael Parks boarded the vessel ADVENTURER III at Watson's Island, Miami, Florida; (ii) on or about January 28, 1973, William Michael Parks arrived at the pier behind the vessel ADVENTURER III on Watson's Island, Miami, Florida; and (iii) on or about March 1, 1973, William Michael Parks entered the Royal Castle at Biscayne Boulevard and Tenth Street, Miami, Florida.

The government called two witnesses to prove a conspiracy to import marijuana into the United States. The first was Fred Williams, a crew member aboard ADVENTURER III. Williams and the captain of the ship met during the early part of 1973 with appellant and Parks. Parks solicited the captain to take the ship to Jamaica for the purpose of picking up a load of marijuana.

There was a second meeting aboard the ship between Williams and appellant. During this meeting, Marino told Williams and the captain the initial details of the smuggling operation. At the third meeting, the appellant, the captain and Williams met on board the ship and proceeded to Negril, Jamaica, where they actually commenced the smuggling operations. Appellant then completed the instructions on how smuggling operations were to proceed. Marino departed, the marijuana was transferred to another ship, and all the coconspirators other than Marino were arrested.

The government's second witness was an agent of the Bureau of Narcotics and Dangerous Drugs. He testified about his surveillance of Parks and appellant.

The government then rested and defendant moved for judgment of acquittal, asserting that none of the overt acts alleged in the indictment had been proved and that there was no proof that the marijuana was destined for the United States. The government responded that it had proved the first overt act of the indictment—the Watson's Island meeting in Miami. Defense counsel argued that there was no testimony as to any meeting occurring *on Watson's Island.* Upon motion, the Court then permitted the government to reopen its case to ask Williams where the meeting aboard the ADVENTURER III took place. Williams then testified that the ADVENTURER III was docked in Miami at Watson's Island.[2] In addition to this meeting, there had been two meetings with Parks

---

1. Of course, once the government has satisfactorily established the existence of the conspiracy, the same evidence used to convict a particular defendant is admissible against all codefendants proved to be members of the conspiracy. *See, e. g., United States v. Morrow,* 5 Cir., 1976, 537 F.2d 120, 136 n. 17 and cases cited therein.

2. On recall, Williams testified as follows:

Q. Mr. Williams, you testified earlier that you met Mr. Marino in company with Mr. Parks and you testified that it was aboard the vessel ADVENTURER III; is that correct?
A. Yes, sir.
Q. Sir, where does the ADVENTURER III dock?
A. At Watson's Island.
Q. And where is that located, sir?
A. Just over here on the bay (indicating).
Q. You are indicating in Miami, Florida?
A Yes, sir, right.

Q. How many meetings did you have with Mr. Parks and Mr. Marino aboard that vessel, sir?
A. At least two.
    \*    \*    \*    \*    \*    \*
THE COURT: When did you have those meetings?
THE WITNESS: The first part of '73.
THE COURT: January '73?
THE WITNESS: Yes, sir.
THE COURT: The first part you say?
THE WITNESS: Yes, sir.
THE COURT: What do you mean by the first part of '73?
THE WITNESS: It could have been the last part of January or the first part of February, along in that time.
THE COURT: Counsel, do you care to inquire?
[DEFENSE COUNSEL]: No, Your Honor, I have no questions.
R. at 67–68.

and appellant aboard the ADVENTURER III. The government then rested its case.

The defense then called its only witness, the appellant, whose testimony comprises a total of two pages. Tr. 70–71. Appellant stated that he had never testified in a court before, had resided in Hallandale, Florida for six years and in Illinois prior thereto, had not finished high school, and had never been convicted of a felony. The government did not cross-examine the witness. The defense rested.

After each party made its final argument, the Court instructed the jury. In giving its instructions on reasonable doubt and credibility, the Trial Judge, in addition to otherwise unobjectionable instructions on the issue, advised the jurors in an unexceptional way that they were to avail themselves of common sense in the process of deliberation. Neither party objected to these instructions. Tr. 129.

On the substantive offense charged in the indictment, the Trial Judge took the following actions. First, the Court read the statute to the jury. Next, it emphasized that the defendant was being tried for conspiracy, and not for importation. Third, the Court said that there were four elements that the government must prove beyond a reasonable doubt—(i) the conspiracy described in the indictment was formed and in existence during the time alleged; (ii) the defendant knowingly and willfully became a member of that conspiracy; (iii) while the conspiracy was in progress and while the defendant was a member thereof, one of the members knowingly and willfully committed at least one of the overt acts charged in the indictment; (iv) the overt act was committed in furtherance of the illegal object of the alleged conspiracy. Then with painstaking care, the Judge gave instructions elaborating on each element. Again, no objection was made. Tr. 129.

■ Appellant first argues that the trial court erred in allowing the government to reopen its case-in-chief. As appellant recognizes, however, a trial court has discretion to allow the government to reopen its case when the government's request is predicated upon its inadvertent failure to have adduced or prove some more or less uncontested fact or facet of its case unless the defendant can show prejudice. *See, e. g., United States v. Batie*, 5 Cir., 1972, 457 F.2d 927; *United States v. Wilcox*, 5 Cir., 1971, 450 F.2d 1131, 1143–44; *Hale v. United States*, 5 Cir. 1969, 410 F.2d 147; *Dixon v. United States*, 5 Cir., 1964, 333 F.2d 348. Considerable latitude and discretion is vested in the trial court in such matters. *See, e. g., Maggard v. Wainwright*, 5 Cir., 1970, 432 F.2d 941.

■ We have carefully examined the record and conclude that the Trial Judge acted within his discretion in allowing the government to reopen its case. The defense had not begun its case when the motion was made. Furthermore, the omission of proof was, without a doubt, inadvertent, and had to do with an uncontested fact—the exact situs of the meeting between Parks and Williams. See *Hale, supra*, 410 F.2d at 152. Under these circumstances, we find no prejudice and no error.

■ Appellant next argues that the trial court erred in its instructions on such concepts as reasonable doubt, by including in his instructions admonitions that the jury was to use its common sense. Since appellant did not object to the giving of these instructions, we must view this allegation under a plain error standard. *E. g., United States v. Brown*, 5 Cir., 1977, 547 F.2d 1264, 1266; *United States v. McDuffie*, 5 Cir., 1976, 542 F.2d 236, 238 n. 3. We find no plain error. The Trial Judge's instructions, considered as a whole, were certainly adequate in all other respects. We do not think that the mere insertion of remarks about the use of common sense as a valuable tool in the deliberative process infects these instructions with plain error. This is especially so since "jurors are not to be presumed ignorant of what everybody else knows. And they are allowed to act upon matters within their general knowledge, without any testimony on those matters." *Commonwealth v. Peckham*, Mass., 1854, 68 Mass. (2 Gray) 514, 515, *cited in United*

*States v. Ricciardi*, 2 Cir., 1966, 357 F.2d 91, 95. To supplement otherwise adequate instructions with admonitions to use common sense is merely explicit judicial recognition of the fact that a jury may and will call upon its common experience in affairs of life when evaluating such matters as the veracity of witnesses. Considering that Judges have, or at least are assumed to have, common sense and are to use it in their varied determinations, it would be ironic to hold that an appeal to this quality of intellect, wisdom and experience would be wrong. True they are to be guided by the Judge's instructions but how else are they to receive them apart from some attribute of common sense? We refuse to find that this is plain error.

█ Finally, appellant argues that the trial court committed plain error in its instructions on the essential elements of the object of the conspiracy. In particular, appellant contends that the trial court erred in failing to instruct the jury that one of the essential elements of the indictment, which the government would have to prove beyond a reasonable doubt, was that the defendant actually intended, by his actions, to further a conspiracy to import marijuana into the United States. That is, the jury should have been charged that unless the government presented proof beyond a reasonable doubt that the defendant had a "specific intent" to send the marijuana to the United States, then he must be acquitted. Since appellant failed to object to the giving of these instructions, we must again review this claim under a plain error standard. *See, e. g., United States v. Brown, supra; United States v. McDuffie, supra.*

In *United States v. Martinez*, 5 Cir., 1974, 496 F.2d 664, *cert. denied*, 419 U.S. 1051, 95 S.Ct. 627, 42 L.Ed.2d 646, a similar claim was raised. There, the indictment charged the appellants with a conspiracy under 21 U.S.C.A. § 963 to import marijuana contrary to 21 U.S.C.A. § 952(a) and to possess marijuana with intent to distribute contrary to 21 U.S.C.A. § 841(a)(1). The trial court in that case gave no instructions which would have apprised the jury of the definition, character, or nature of the acts of importing, possessing, or distributing marijuana. Moreover, the trial court omitted any reference to the substantive crime of possessing with intent to distribute marijuana, one of the objects of the charged conspiracy. Only once during the entire charge did the court attempt to inform the jury of the crime with which appellants were charged, when it instructed: "You, the jury, determine from all the facts and circumstances whether or not a criminal conspiracy existed between these two persons and others to import marijuana from Mexico into the United States." *Id.* 496 F.2d at 669. This defect, with others, we found to be plain error, necessitating reversal.

This case is distinguishable from *Martinez*, however. In this case, the jury instructions, read as a whole, adequately charged the jury as to the definition, character, and nature of the acts of importing marijuana into the United States. Furthermore, there were adequate instructions as to the necessity that the jury find beyond a reasonable doubt that appellant had specific intent to commit the crime charged in the indictment. Finally, there is no doubt that there was sufficient evidence from which the jury could have inferred beyond a reasonable doubt that appellant knew the destination of the marijuana. Under these circumstances we find no plain error.

AFFIRMED.