**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Roberto A. MOLINARES,**
**Defendant-Appellant.**

**No. 81–6227.**

United States Court of Appeals,
Eleventh Circuit.

March 14, 1983.

---

Douglas L. Williams, Nathan & Williams, P.A., Miami, Fla., for defendant-appellant.

Bruce E. Morton, Tax Division, Criminal Section, Dept. of Justice, Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div. Dept. of Justice, Michael L. Paup, Chief, Appellate Section, Washington, D.C., for plaintiff-appellee.

Before TJOFLAT, KRAVITCH and HATCHETT, Circuit Judges.

TJOFLAT, Circuit Judge:

Roberto Molinares appeals his conviction for making a false declaration before a court in violation of 18 U.S.C. § 1623 (1976 & Supp. V 1981). We affirm.

## I.

We recite only so much of the facts as are necessary to our disposition of this case. In August 1980, two agents of the Criminal Investigation Division of the Internal Revenue Service (IRS) interviewed Molinares at his home in connection with possible income tax and currency violations. They also served him with a subpoena that commanded him to appear before a grand jury and to bring certain business records. Molinares moved to quash that subpoena, and on October 3, 1980, the district court conducted an evidentiary hearing on his motion to quash. The government alleges that during this evidentiary hearing, as well as during the interview in his home, Molinares made several false statements. The government sought to indict and convict Molinares for making these false statements.

On August 20, 1981, a grand jury did indict Molinares, alleging six separate counts. Count I charged Molinares with making a false statement in a matter within the jurisdiction of an agency of the United States, in violation of 18 U.S.C. § 1001 (1976). It was based upon a statement Molinares made during the interview in his home. Counts II–VI charged Molinares with making five different false statements during the October 3, 1980, evidentiary hearing before the district court, in violation of 18 U.S.C. § 1623.[1] Molinares moved to dismiss the indictment and, in the alternative, to consolidate the counts. The court denied both motions on October 5, 1981, and the trial began that day.

To prove that Molinares made the false statements charged in counts II–VI while under oath, an essential element of a section 1623 offense, the government called Paul Haferling, the court reporter from the

October 3, 1980, evidentiary hearing. Haferling testified that the transcript that he had made of the hearing was a true and accurate transcription of the hearing. The government then moved to introduce into evidence the transcript which contained Haferling's recitation that Molinares "was called as a witness and *having been first duly sworn,* was examined and testified as follows: . . ." Record, vol. 6, at 190 (emphasis added). Molinares objected to the admission of the transcript on the general grounds of relevancy, materiality, and competency. The court overruled these objections, however, and allowed the transcript into evidence. There was no other testimony during the government's case in chief that Molinares took an oath before making a false statement.

At the close of the government's case, Molinares moved for a judgment of acquittal on all counts pursuant to Fed.R.Crim.P. 29(a). Molinares argued, as to counts II–VI, that the government had failed to prove that he had made statements under oath. The government responded that the evidence was sufficient; alternatively, it moved to reopen its case so that it could introduce further evidence that Molinares had made the false statements while under oath. The court heard oral argument on this motion and noted:

> It is significant that the reporter was here. He was under oath and he did say that this transcript is true and correct and it does contain this recital. I am aware that he did not give any independent testimony that he recalls a swearing or that there was no testimony by anyone [sic] else that he was given an oath.

Record, vol. 7, at 452–53. It then granted the government's motion to reopen.

The government recalled IRS special agent Raul DeArmas. DeArmas testified that he had participated in the October 3, 1980, evidentiary hearing and that Molinares was placed under oath before testifying. DeArmas further testified that the

1. 18 U.S.C. § 1623(a) (1976 & Supp. V 1981) provides: "Whoever under oath . . . in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration . . . shall be [punished]."

court reporter administered the oath. The government then closed its case, and Molinares renewed his rule 29(a) motion to dismiss. The court granted his motion as to counts I (the section 1001 charge) and VI (a section 1623 charge) on grounds unrelated to this appeal.

Molinares began his defense by attacking the oath element of the section 1623 offenses; he recalled Haferling, the court reporter. Haferling testified that he had not administered an oath to Molinares at the October 3, 1980, evidentiary hearing; he stated that he was sure of this because he had "never administered an oath to any witness since I have been in federal court." *Id.* at 632. Haferling did testify, however, that "[Molinares] was given the oath." *Id.* at 633.

At the close of his defense, Molinares again renewed his rule 29(a) motion to dismiss the remaining section 1623 counts. The court denied the motion as to count II and ordered the government to elect either count III or count IV, or consolidate them. It withheld ruling on count V. The government then dismissed count IV, leaving counts II, III, and V for the jury. The jury returned a verdict of guilty on count II, and not guilty on counts III and V.

Molinares appeals this conviction arguing, inter alia, that (1) there was insufficient evidence to prove that he made a false statement while under oath, and (2) the court improperly allowed the government to reopen its case to introduce additional evidence that he made a false statement while under oath. We now address these arguments, and others Molinares makes as grounds for reversal.

2. It is undisputed that an essential element of the crime of perjury under 18 U.S.C. § 1623 is that the accused shall have taken an oath before giving the allegedly false testimony. *Cf. Smith v. United States,* 363 F.2d 143, 144 (5th Cir.1966) (proof that defendant was under oath essential element of a conviction under 18 U.S.C. § 1621, the general perjury statute).

3. Although there was some confusion in the testimony as to who administered the oath, the identity of the oath-giver is not an essential element for a conviction under § 1623. We agree with Molinares that it would be desirable to know who administered the oath and the

## II.

Molinares' first argument is that there was insufficient evidence to prove that he made a false statement while under oath.[2] In analyzing this argument, we note that "[i]t is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) (citations omitted). "The standard of review is whether a reasonably minded jury must necessarily entertain a reasonable doubt as to the [defendant's] guilt." *United States v. Gianni,* 678 F.2d 956, 959 (11th Cir.), *cert. denied,* ——— U.S. ———, 103 S.Ct. 491, 74 L.Ed.2d ——— (1982).

Our review of the record reveals ample evidence to convince a reasonable trier of fact beyond a reasonable doubt that Molinares gave his testimony under oath at the October 3 evidentiary hearing. The jury heard direct testimony from two witnesses that the oath was administered to Molinares at the October 3 hearing.[3] In addition, the certified transcript of the proceeding—introduced into evidence by the court reporter who testified that it was true and accurate—unequivocally indicates that appellant was duly sworn before testifying.[4] In the absence of any evidence to the contrary, this is more than sufficient to establish that Molinares made the allegedly false statements while under oath. *See United States v. Prior,* 546 F.2d 1254, 1258 (5th Cir.1977)

exact words used. We decline, however, to make these considerations essential elements of the crime of perjury under § 1623. Counsel remains free, nevertheless, in attempting to establish a reasonable doubt in the mind of the trier of fact about the oath element, to inquire of the government's witnesses in these areas.

4. We note that "[t]he transcript in any case certified by the reporter shall be deemed prima facie a correct statement of the testimony taken and proceedings had." 28 U.S.C. § 753(b) (1976).

(where court reporter's pre-printed form indicated that court reporter administered the oath, and grand jury foreman testified that he personally administered the oath, "[i]t was for the jury to weigh the relative credibility of the Foreman and the form. There was ample evidence from which they could and did conclude that the oath had been properly administered by the Foreman, and that the court reporter had simply used the wrong certificate form when preparing the transcript."); *United States v. Seavey,* 180 F.2d 837, 839 (3d Cir.1950) (where grand jury foreman testified that he swore every witness, but could not recall the testimony of the defendant, and the court reporter testified that he had been present during defendant's testimony and had seen him take the oath, although his notes of the testimony did not show the defendant had been sworn, "a jury could find from all this that the oath had actually been administered.").

Nonetheless, Molinares argues that under *Smith v. United States,* 363 F.2d 143 (5th Cir.1966), we must find the evidence that he was duly sworn insufficient. In *Smith,* the government also prosecuted a defendant for perjury and the question there was whether the defendant had been duly sworn. To prove this the government did not call the court reporter as a witness. Instead, the government called the court clerk who identified a certified copy of the transcript of the hearing in which the alleged perjury occurred. The clerk gave no additional testimony other than that he had been the court clerk for nine years. He did not testify that he was present at the hearing, that he administered the oath, or that he observed anyone else do so. Therefore, we held that the bare statement in the transcript, unsupported by testimony, that the defendant had been duly sworn was insufficient evidence to support a conviction of perjury. Molinares argues that we must do the same in this case. We disagree for several reasons.

First, the quantum of proof on the oath element in this case far exceeds that in *Smith.* In addition, *Smith* involved a prosecution under a different statute, 18 U.S.C. § 1621 (1976).[5] That statute, the general perjury statute, requires greater proof on the oath element. More specifically, section 1621 requires proof that the maker of a willful false statement had "taken an oath before a competent tribunal, officer, or person . . . ." 18 U.S.C. § 1621(1). Section 1621 requires proof of who administered the oath, as well as the competency and authorization of the oath giver. In contrast, 28 U.S.C. § 1623, the statute under which the government prosecuted Molinares in this case, does not require the government to prove who administered the oath, nor whether that person was competent or authorized to administer it.[6] Instead, section

---

**5.** Molinares errs in his brief when he states that 18 U.S.C. § 1621 is the "almost verbatim" predecessor of § 1623. In adopting 28 U.S.C. § 1623, Congress sought to distinguish prosecutions for perjury committed before courts and grand juries from other types of perjury, and to ease common law evidentiary requirements for perjury prosecutions. More specifically, Congress passed § 1623 in 1970 "to facilitate Federal perjury prosecutions and establish a new false declaration provision applicable in Federal grand jury and court proceedings. It abandons the so-called two-witness and direct evidence rule in such prosecutions and authorizes a conviction based on irreconcilably inconsistent declarations under oath." H.R.Rep. No. 91–1549, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad.News 4007, 4008.

**6.** Congress may well have reasoned that the additional requirements of § 1621 were inapplicable to § 1623 prosecutions since the latter

are confined to perjury committed "in any proceeding before or ancillary to any court or grand jury of the United States . . . ." The fact that the proceedings take place before a court or a grand jury gives rise to an inference that the defendant was under oath while testifying. *See Vuckson v. United States,* 354 F.2d 918, 921 (9th Cir.) ("there is a strong presumption that all procedures in connection [with the grand jury testimony] were regular, i.e., that testimony before the grand jury was given under oath."), *cert. denied,* 384 U.S. 991, 86 S.Ct. 1896, 16 L.Ed.2d 1007 (1966); *cf. United States v. Nunan,* 236 F.2d 576, 594 (2d Cir.1956) ("strong presumption of regularity accorded to the deliberations and findings of grand juries"). The presence of the district judge at a hearing on a motion to quash a grand jury subpoena must give rise to an equally strong inference as to the regularity of the proceedings, e.g., that testimony given is under oath. *See United*

1623 merely requires that the government prove that the maker of a knowingly false declaration before a court be under oath at the time of the statement. Thus, while we held the evidence in *Smith* insufficient to sustain the greater burden of proof required by section 1621,[7] we hold the evidence in this case sufficient to sustain the lesser burden of proof required under section 1623.

### III.

■ Molinares next argues that the district court erred in allowing the government to reopen its case to present additional evidence that he was duly sworn. Of course, "[i]t is well established that a trial court may permit the reopening of a case in order that omitted evidence may be presented. Considerable latitude in discretion is vested in the trial court in such matters." *Maggard v. Wainwright*, 432 F.2d 941, 942 (5th Cir.1970) (citations omitted), *cert. denied*, 402 U.S. 946, 91 S.Ct. 1639, 29 L.Ed.2d 116 (1971). Thus, we will not disturb the district court's exercise of

States v. Mathern, 329 F.Supp. 536, 538 (E.D. Pa.1971) (virtually conclusive presumption that testimony is under oath when given before court during course of a criminal trial).

7. The government argues that the continuing validity of the *Smith* decision is questionable in light of the adoption of the Federal Rules of Evidence in 1975, subsequent to our holding in *Smith*. Fed.R.Evid. 803(8)(B) creates a hearsay exception for "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... matters observed pursuant to duty imposed by law as to which matters there was a duty to report ...." The Court of Appeals for the Ninth Circuit, in rejecting our holding in *Smith*, has apparently concluded that the adoption of Fed.R.Evid. 803(8)(B) vitiates the *Smith* rule. *United States v. Arias*, 575 F.2d 253, 254–55 (9th Cir.), *cert. denied*, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978). Since *Smith* is distinguishable from this case, we do not decide that issue. We note, however, that the holding in *Smith* can be understood only as a holding that the bare statement of the court reporter in the transcript, without accompanying testimony, lacked probative value on the question of the administration of the oath *vel non*.

8. In his brief, Molinares argues that the government moved to reopen after his motion for acquittal only because of the insufficiency of

discretion unless the circumstances of the case show that Molinares suffered actual prejudice in the conduct of his defense. *See United States v. Marino*, 562 F.2d 941, 944 (5th Cir.1977), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978).

Our review of the record indicates that the district court did not prejudice Molinares by allowing the government to reopen. Molinares had not yet presented any evidence, and his defense was not prejudiced in any way. We find no error.[8] *See United States v. Marino, supra; United States v. Shaw*, 555 F.2d 1295, 1301 (5th Cir.1977); *United States v. Ard*, 544 F.2d 225, 226–27 (5th Cir.1976).

### IV.

■ Molinares next presents several additional but equally meritless arguments for reversal. First, Molinares argues that the court improperly denied his motion to dismiss or consolidate counts II–VI of the indictment prior to trial. He contends that the counts were multiplicious in that they

the proof on the oath element. He argues that permitting reopening poses a Hobson's choice for the defendant between waiving the right to have the government prove each material element of the offense and aiding the government by notifying it of errors or omissions in its case. Fed.R.Crim.P. 29(c) refutes this contention. It states in pertinent part: "It shall not be necessary to the making of a motion [for judgment of acquittal] that a similar motion has been made prior to the submission of the case to the jury." Thus, Molinares could have waited until the jury returned its verdict to object to the sufficiency of the government's proof. The dilemma he complains of plainly could have been avoided.

We note, further, that in permitting reopening, the district court adverted to Molinares' failure to object specifically to the trial transcript on the ground that it did not prove administration of the oath. Record, vol. 7, at 495. Indeed, the record reveals that when offered an opportunity by the court to clarify his objection to the "competency" of the transcript, Molinares did not make his objection more specific. Record, vol. 7, at 300–01. Under these circumstances, even assuming arguendo a failure of proof by the government, we find any omission inadvertent and subject to cure by reopening. *See Marino, supra; Ard, supra.*

alleged multiple false representations occurring in one proceeding, which false representations constituted but one offense.[9] He further suggests that these multiplicious counts prejudiced him by suggesting enhanced criminality to the jury. We hold, however, that the indictment was not multiplicious.

In *United States v. De La Torre,* 634 F.2d 792, 795 (5th Cir.1981), this court [10] expounded the standard for multiplicity in prosecutions under 18 U.S.C. § 1623: "Separate and distinct false declarations in trial testimony, which require different factual proof of falsity, may properly be charged in separate counts, albeit they are all related and arise out of the same transaction or subject matter." Thus, as long as "[d]ifferent evidence [is] required to establish that the various responses were false," *id.,* a multiple count indictment is technically sound and not multiplicious.

Our review of counts II–VI of the indictment indicates that they were not multiplicious under the *De La Torre* test. Each charged separate and distinct false declarations made during the October 3 hearing and each, at least prior to trial, required different factual proof of their falsity. Contrary to Molinares' contention, it is simply irrelevant that each false statement was material to the same question before the court at the October 3 hearing; this is indicative more of a systematic attempt to mislead the court rather than of any multiplicity in the indictment.[11]

■ Molinares next argues that the court erred in failing to dismiss count I of the indictment prior to trial, instead waiting until the close of the government's case. This contention borders on the frivolous. The record strongly indicates that the court dismissed count I because the government failed to prove that the statement in question was in fact false (not the ground for which dismissal was sought prior to trial). Dismissal on this ground could only occur after the presentation of the government's evidence. The court, therefore, properly denied Molinares' motion to dismiss count I prior to trial.

■ Molinares' final argument is that there was insufficient evidence to prove the materiality of the false statement charged in count II. In this circuit,[12]

The test for materiality is whether the false testimony was capable of influencing the tribunal on the issue before it. However, as we have recently noted, "the statement need not be material to any *particular* issue but may be material to any proper matter of inquiry." *United States v. Abrams,* 568 F.2d 411, 420 (5th Cir.1978) (emphasis in original).

*United States v. Cuesta,* 597 F.2d 903, 921 (5th Cir.) (citations omitted), *cert. denied,* 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 377 (1979). The test is satisfied if the statements "may be material·to collateral matters that might influence the outcome of decisions before the [court]." *United States v. Cosby,* 601 F.2d 754, 756 (5th Cir.1979). Materiality is exclusively a legal question to be decided by the court. *United States v. Thompson,* 637 F.2d 267, 268 (5th Cir.1981).

**9.** Professor Wright states that "[a]n indictment or information charging the same offense in more than one count is multiplicious ...." 1 C. Wright, Federal Practice & Procedure, § 145, at 524 (1982).

**10.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc) we adopted as precedent the decisions of the former Fifth Circuit decided prior to October 1, 1981.

**11.** As stated in the text, at 650 *supra,* at the close of the government's proof the district court ordered the government either to dismiss count III or count IV, or consolidate them, "in light of the substantial proof that I think is applicable to both counts." Record, vol. 7, at 669–70. The court reserved ruling on count V. While multiplicity may not be apparent from the face of the indictment, after presentation of the government's case the court may quite properly find that evidentiary overlap requires consolidation. Absent a showing of prejudice, there is no error in this procedure. We find no such prejudice here. The jury acquitted the defendant on two counts and convicted him on one, indicating it was capable of differentiating between the counts and evaluating each on its own merits.

**12.** See note 10 *supra.*

The October 3, 1980, proceeding was a hearing on a motion to quash a grand jury subpoena for certain corporate documents held by Molinares. Molinares claimed that he held those documents in a personal, not a representative, capacity, and therefore his fifth amendment privilege applied. Thus, the court had to focus upon the capacity in which Molinares held the documents of the corporation. The false statement alleged in count II was a denial that Molinares was a shareholder of the corporation in question. Clearly, this statement was material to the court's inquiry, even if Molinares is correct that it was not ultimately dispositive of the issue.[13]

The judgment of the district court is AFFIRMED.

---

**13.** Molinares also suggests that there is nothing in the record to enable us to determine the parameters of materiality since the entire transcript of the October 3, 1980, hearing was not offered by the government. However, the record reveals that the entire transcript of the evidentiary hearing was in fact admitted into evidence and reviewed by the district court, although only portions of the transcript were read to the jury. Record, vol. 6, at 189.