[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10856
Non-Argument Calendar

_____

D.C. Docket No. 1:10-tp-20200-JEM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID SUBIL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 8, 2012)

Before TJOFLAT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

David Subil appeals the revocation of his supervised release and sentence of

21 months' imprisonment, 18 U.S.C. § 3583(e).  For the reasons set forth below, we affirm the district court's revocation of Subil's term of supervised release and imposition of a 21-month sentence.

I.

In 2006, Subil was sentenced to 60 months' imprisonment and 3 years' supervised release for use of a fictitious name/address to commit fraud, in violation of 18 U.S.C. § 1342.  The conditions of Subil's supervised release specified that he was not to commit another federal, state, or local crime; that he report to a probation officer as directed; and that he would notify the probation officer ten days before any change of residence.  In 2010, Subil's probation officer, John Steinhilber, filed a petition recommending that Subil's supervision be revoked.  Steinhilber believed, *inter alia*, that Subil had violated his conditions of supervised release by (1) driving under the influence in violation of Florida law; (2) committing grand theft in violation of Florida law; (3) failing to notify the probation officer of a change in Subil's residence; and (4) failing to report to the probation officer as directed.

At the revocation hearing, the government presented the testimony of Steinhilber and offered into evidence two copies of judgments of conviction.  The judgments indicated that "David Subil" had pled guilty to grand theft and had pled

2

*nolo contendere* to driving under the influence.  Subil objected to the admission of the evidence on the grounds of "improper foundation," asserting that the documents were not properly certified.  The court found that the judgments were certified and overruled Subil's objections. Steinhilber testified that he had not questioned any witnesses as to whether Subil himself was the "David Subil" named in the judgement for grand theft.

Following Steinhilber's testimony, the government stated that it had no further evidence, and the parties presented their final arguments to the court.  In his closing argument, Subil conceded that he had failed to notify the probation officer of a change in Subil's residence and failed to report to the probation officer as directed.  The court stated it would schedule a hearing to make a final determination on the remaining charges.

The day after the hearing, the government filed a memorandum in which it asserted that it had booking photographs of Subil related to the grand-theft and driving-under-the-influence cases that provided further evidence that Subil was the individual named in the two judgments.  The government argued that the court should allow the government to reopen its case to introduce the photographs because the federal public defender, who had represented Subil before he retained his present counsel, had stated that Subil would not contest the violations. It was

3

not until the night before the hearing that Subil's present counsel informed the government that the hearing would, in fact, be contested.  The government later formally moved to reopen the hearing.  Over Subil's objection, the court granted the government's motion.

Upon the reopening of the revocation proceedings, Subil asserted that his previous objections to the judgments of convictions were on the grounds that their admission violated his confrontation rights.   The court found that the records were reliable and that the reliability of the evidence outweighed Subil's right to confrontation.  The court further stated that it believed that the government was using the judgments to prove the fact of conviction, and there was no witness who would be able to reliably testify as to anything of value with respect to the fact of his conviction.  Thus, it overruled Subil's objection.  Next, the government introduced two mug shot profiles of an individual who Steinhilber recognized as Subil.  The profiles indicated that Subil was arrested for driving under the influence on October 3, 2010, and for grand theft on October 23, 2010.

Subil argued that the government had not shown that the relevant conduct occurred during his supervised release period.  The court determined that he had committed the state offenses during his period of supervision because it was unlikely that he had committed the offenses before his imprisonment in 2006, but

4

was not arrested for the offenses until 2010. The court determined that Subil had violated the mandatory conditions of his supervision based on the judgments of convictions.

In a sentencing memorandum, Subil requested that the court sentence him to a period of supervised release, not to a period of imprisonment, in order to facilitate his rehabilitation. At sentencing, the government contended that Subil's position at the revocation hearing was inconsistent with his acceptance of responsibility. Further, there was insufficient evidence to demonstrate whether it would be better for him to be out on supervised release, as opposed to in prison. The government asserted that it hoped that Subil could obtain the treatment he needed in prison. Subil, speaking on his own behalf, responded that the reason he did not immediately accept responsibility for his violations was because he did not believe he would have such a "good response" from the government. Subil stated that he had a "medical issue," as his probation officer knew.

The court responded to Subil that no one questioned whether he had a medical issue. The court stated that, "[i]n fact, it's one of the ways they're urging me to put you in so that you can get the medical treatment that they agree that you need." The court stated that, had Subil initially admitted responsibility, it would be more sympathetic to his request not to be sentenced to a term of imprisonment.

5

Subil instead seemed to be trying to have the "best of both worlds" by first contesting the violations at the hearing and then, later, admitting that he did commit the violations. The court stated that Subil could do that and had "every right to do that." However, it did not help him at sentencing. The court stated that it had considered Subil's statements, the parties' arguments, all of the information in the violation report, and the evidence that had been presented. It then imposed a sentence of 21 months' imprisonment, at the low end of the applicable guideline range of 21 to 27 months' imprisonment, and 15 months' supervised release.

## II.

On appeal, Subil argues that the district court erred in admitting a Florida judgment of conviction for grand theft because there was no foundation for its admission, as the government had not proven that Subil was the "David Subil" named in the judgment. He also contends that the district court's findings were to be based on verified facts and an accurate knowledge of his actions.

A district court's revocation of supervised release is reviewed under an abuse of discretion standard. *See United States v. Frazier*, 26 F.3d 110, 112 (11th Cir. 1994). We review for plain error those issues to which the defendant did not timely object. *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005). An error is plain when it is "obvious" or "clear" under current law. *Id.* at 1207

6

(quotations omitted).

A district court's finding that a defendant has committed a violation of the terms of his supervision should be based on verified facts and accurate knowledge of the defendant's behavior. *See Morrissey v. Brewer*, 408 U.S. 471, 484, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484 (1972); *United States v. Copeland*, 20 F.3d 412, 414 (11th Cir. 1994) (providing that those facing revocation of supervised release are entitled to the same due process protections provided to those facing revocation of parole). The rules that apply during a revocation hearing should be informal and flexible enough for the court to consider evidence, such as letters, affidavits and other material, which would not be admissible in a criminal trial. *Morrissey*, 408 U.S. at 489, 92 S.Ct. at 2604. The Federal Rules of Evidence do not apply in supervised release revocation proceedings. *Frazier*, 26 F.3d at 114. A certified copy of a conviction is proper evidence that a defendant violated a state or federal law and, thereby, violated a condition of his or her supervised release. *See United States v. Hofierka*, 83 F.3d 357, 363 (11th Cir. 1996).

Certified copies of public records are self-authenticating where the copy is certified as correct by a custodian or other person authorized to make the certification. Fed.R.Evid. 902(4)(A). In Subil's case, the district court determined that the judgment was properly certified, such that it was admissible, and Subil

7

does not challenge the court's certification finding. Thus, the district court did not commit error, let alone plain error, in admitting the judgment without first requiring an independent showing that Subil was the "David Subil" named in the judgment. Further, after the admission of the judgment, the government offered a booking photograph of Subil related to his arrest for grand theft. Thus, although the government did not show that Subil was the "David Subil" depicted in the judgment before the court admitted the judgment, it did provide additional evidence demonstrating such after the judgment was admitted. Accordingly, the district court did not plainly err in relying on the grand-theft judgment of conviction as evidence that Subil had violated the terms of his supervised release.

## III.

Subil argues that the district court abused its discretion in granting the government's motion to reopen the revocation proceedings for the presentation of additional evidence. Subil contends that (1) the motion was untimely; (2) the evidence was available to the government at the inception of the proceedings with minimal diligence; (3) the reopening prejudiced Subil, as it allowed the government to directly respond to his arguments concerning deficiencies in the evidence; and (4) it had no reason for requesting the reopening.

A decision to reopen a case to introduce additional evidence is reviewed for

8

abuse of discretion. *United States v. Byrd,* 403 F.3d 1278, 1283 (11th Cir. 2005).

A district court has great latitude in determining whether to permit the reopening

of a case so that omitted evidence may be presented. *United States v. Molinares*,

700 F.2d 647, 652 (11th Cir. 1983). We will not disturb the district court's

exercise of discretion unless the defendant suffered actual prejudice in the conduct

of his defense. *Id.* at 649, 652. In determining whether a district court has abused

its discretion in declining to reopen a case for a defendant to present his own

testimony, we examine the following factors: (1) the timeliness of the motion to

reopen; (2) the character of the testimony to be offered; (3) the effect of granting

the motion to reopen; and (4) the reasonableness of the excuse for the request to

reopen. *Byrd*, 403 F.3d at 1284, 1287.

Review of the *Byrd* factors demonstrates that they weigh in favor of the

government. *See id.* at 1284. The government first requested the court to reopen

the proceedings for the purpose of presenting booking photographs of Subil the

day after the hearing was held, and thus, its request was timely. The government

asserted that it had not attempted to obtain the evidence it presented upon the

reopening because Subil's previous counsel told the government that Subil would

not contest the violations. Thus, although the character of the evidence the

government introduced upon reopening ordinarily should have been presented at

9

the initial proceeding, Subil's previous counsel's representations excused the government's failure to present the evidence initially.

Although Subil argues that allowing the government to reopen its case after it heard Subil's arguments prejudiced him, we have previously rejected such an argument. *See Molinares*, 700 F.2d at 649, 652 (determining that the defendant's defense had not been prejudiced by the district court's decision to allow the government to present evidence in response to arguments made in the defendant's motion for a judgment of acquittal). Finally, the government's excuse for requesting the reopening—that it was unprepared to present the evidence initially because it was unaware that the hearing would be contested—was reasonable. Accordingly, the district court did not abuse its discretion in allowing the government to reopen its case to present additional evidence.

## IV.

Subil argues that the district court's determination that he violated the terms of his supervised release during his period of supervision by committing grand theft was not supported by sufficient evidence, as the evidence did not indicate when he actually committed grand theft.

We review the district court's conclusion that a defendant violated the terms of his supervised release for an abuse of discretion. *Copeland*, 20 F.3d at 413. A

10

district court may revoke a defendant's term of supervised release and impose a prison sentence when it finds by a preponderance of the evidence that the defendant violated a condition of his supervised release. 18 U.S.C. § 3583(e)(3); *United States v. Sweeting*, 437 F.3d 1105, 1107 (11th Cir. 2006).

Sufficient evidence supports the court's finding that Subil committed grand theft during the term of his supervised release.  The copy of his grand-theft conviction was sufficient evidence to prove he violated a condition of his supervision.  *Hofierka*, 83 F.3d at 363 (affirming district court's finding that defendant had violated the terms of his supervised release based on a certified copy of defendant's judgment of conviction alone).  The government demonstrated that Subil was the "David Subil" depicted in the judgment of conviction.  Further, Steinhilber testified that the mug shot profile stated that Subil was arrested for grand theft on October 23, 2010.  As the district court determined, it was unlikely that Subil committed grand theft in 2006, before his incarceration, but was not arrested for the offense until 2010.  Thus, the mug shot profile and Steinhilber's testimony proved by a preponderance of the evidence that Subil committed grand theft during his term of supervised release.

## V.

Subil argues that he was deprived of procedural due process at his

11

supervised release revocation hearing.  According to Subil, he was never provided with a full disclosure of the evidence against him, as the government never provided him with his PSI or his mental health records.  Subil further argues that the district court erred in admitting hearsay evidence concerning the underlying violations because it failed to properly balance Subil's right to confrontation against the government's reason for not allowing confrontation.  Subil contends that he did not have an opportunity to present mitigating evidence because he was denied access to his mental health records that the government possessed.  Finally, Subil asserts that the court did not state its findings for why it revoked his supervised release in sufficient detail.

We review *de novo* whether a defendant's due process rights were violated. *See United States v. Watkins*, 147 F.3d 1294, 1296 (11th Cir. 1998) (reviewing *de novo* whether a re-sentencing hearing violated defendant's due process rights).  A defendant facing revocation of supervised release is not entitled to the same procedural protections afforded a defendant in a criminal proceeding, but is entitled to the protections set forth in *Morrissey v. Brewer*.  *See Copeland*, 20 F.3d at 414; *Morrissey*, 408 U.S. at 487-89, 92 S.Ct. at 2603-04.  One of the protections set forth in *Morrissey* is the requirement that a court make findings that demonstrate the reasons for the revocation of supervised release and the evidence

12

upon which the court relied. *Morrissey*, 408 U.S. at 489, 92 S.Ct. at 2604. A district court may state from the bench its reasons for revoking a defendant's supervised release. *Copeland*, 20 F.3d at 414. General conclusory reasons for the revocation do not satisfy due process. *Id.* Fed.R.Crim.P. 32.1 sets forth most of the minimal due process rights that apply to revocation proceedings. *Frazier*, 26 F.3d at 114. Pursuant to Fed.R.Crim.P. 32.1, a defendant is entitled to the following: (1) written notice of the alleged violation; (2) disclosure of the evidence against the defendant; (3) an opportunity to appear at the hearing, present evidence, and question any adverse witness except where the court determines that the interest of justice does not require an appearance by such a witness; (4) notice of the right to counsel; and (5) an opportunity to make a statement and present any mitigating evidence. Fed.R.Crim.P. 32.1(b)(2)(A)-(E).

Because defendants have the right to confront and cross-examine adverse witnesses during a supervised release revocation proceeding, the admission of hearsay is not automatic. *Frazier*, 26 F.3d at 114. However, the Supreme Court has stated that a defendant's right to confrontation does not bar appropriate use of conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence, during a revocation hearing. *See Gagnon v. Scarpelli*, 411 U.S. 778, 782 n.5, 93 S.Ct. 1756, 1760 n.5, 36 L.Ed.2d 656 (1973). In deciding

13

whether to admit hearsay testimony, the court should balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation. *Frazier*, 26 F.3d at 114. Further, the hearsay statement must be reliable. *Id.* We have previously held that a defendant's right to confrontation was not violated by the admission of hearsay where a district court determined that good cause existed for its admission, as the hearsay was highly reliable. *United States v. Penn*, 721 F.2d 762, 764-66 (11th Cir. 1983).

Subil was provided with disclosure of the evidence against him. To the extent that the government did rely on portions of an earlier version of Subil's presentence investigation report ("PSI") to prove that Subil committed the violations, it filed the pages of the PSI upon which it relied. Review of the record demonstrates that the government never relied on his mental health records as evidence against him at the hearing. Rather, Subil was the one to cite to his mental health history as mitigating evidence. Subil's opportunity to present mitigating evidence was not impeded by the government. Steinhilber testified as to the contents of the one report that he possessed and testified that the Bureau of Prisons did not provide him with any of Subil's medical records.

The district court properly balanced Subil's right to confrontation against the government's reason for not allowing confrontation with respect to the

14

judgments of conviction. *Frazier*, 26 F.3d at 114. The court noted the highly reliable nature of the judgments of conviction and noted the small value, if any, that would be had by having a live witness with personal knowledge of Subil's convictions testify as to the judgments. *See Penn*, 721 F.2d at 764-66. The court also noted that it was unlikely that there would even be a witness who would have such personal knowledge. Finally, the district court stated the reasons for the revocation of supervised release and the evidence upon which the court relied in sufficient detail. The court indicated that it relied on Subil's judgments of convictions with respect to the violations of state law, and Subil had previously conceded the reporting and notification violations. Thus, Subil's due process rights were not violated during the supervised release revocation hearing.

## VI.

Subil argues that the district court misapplied the Sentencing Guidelines in determining what grade of violation he had committed because the court did not consider his actual conduct, but only considered the criminal charges underlying his convictions. According to Subil, because the judgments did not indicate whether he actually had committed the conduct, the court could not determine what grade of violation he committed based on the judgements alone. Subil contends that the court impermissibly considered his need for mental health

15

treatment in deciding to imprison him, in violation of the Supreme Court's recent decision in *Tapia v. United States*, 564 U.S. ___, ___, 131 S.Ct. 2382, 2385, 2392-93, 180 L.Ed.2d 357 (2011), and impermissibly considered the fact that Subil had exercised his right to a final revocation hearing.

We review the sentence imposed upon the revocation of supervised release for reasonableness. *United States v. Velasquez Velasquez*, 524 F.3d 1248, 1252 (11th Cir. 2008). This reasonableness review applies the deferential abuse of discretion standard.[1] *Gall v. United States*, 552 U.S. 38, 46, 128 S.Ct. 586, 594, 169 L.Ed.2d 445 (2007). The party challenging the sentence has the burden of establishing that the sentence was unreasonable. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2008).

In reviewing the reasonableness of a sentence, we conduct a two-step review. *Gall*, 552 U.S. at 51, 128 S.Ct. at 597. First, we must ensure that the sentence was procedurally reasonable, which includes proper calculation of the guideline range. *Id.* Once we determine that a sentence is procedurally sound, we must examine whether the sentence was substantively reasonable in light of the

---

[1] We have not decided the appropriate standard of review for reasonableness where a defendant does not object to the reasonableness of his sentence on the grounds raised on appeal, as is the case here. Nonetheless, the resolution of the standard of review issue does not affect the reasonableness analysis or ultimate outcome of this case.

16

record and the § 3553(a) factors. *Id.* A sentence that is based entirely upon an impermissible factor is unreasonable because the sentence fails to achieve the purposes of § 3553(a). *Velasquez Velasquez*, 524 F.3d at 1252.

Chapter 7 of the Sentencing Guidelines governs violations of supervised release and provides recommended ranges of imprisonment applicable upon revocation. *United States v. Silva*, 443 F.3d 795, 799 (11th Cir. 2006) (citing U.S.S.G. § 7B1.4). Under the Sentencing Guidelines, where a defendant violated more than one condition of supervision, the grade of the violation is determined by the violation with the most serious grade. U.S.S.G. § 7B1.1(b). The Guidelines provide that conduct that constitutes a state offense punishable by a term of imprisonment exceeding one year is a Grade B violation for which revocation of supervised release is mandatory. U.S.S.G. §§ 7B1.1(a)(2), 7B1.3(a)(1). The commentary to the Guidelines indicates that the grade of the violation is to be based on a defendant's actual conduct, rather than the conduct that is the subject of the criminal charges or the conduct of which the defendant is convicted in a criminal proceeding. U.S.S.G. § 7B1.1, comment. (n.1).

Florida law allows a defendant to enter a plea of convenience, and thus, a defendant may plead guilty while maintaining his innocence. *See Garces v. U.S. Att'y Gen.*, 611 F.3d 1337, 1347-48 (11th Cir. 2010); Fla.R.Crim.P. 3.172(e)

17

(providing that, before the trial judge accepts a guilty plea, the court must determine that the defendant either acknowledges his guilt or acknowledges that the plea is in his best interest, while maintaining his innocence).  Subil's judgment for grand theft does not indicate whether his plea of guilty was a plea of convenience or an acknowledgment of his guilt.  Regardless, even if Subil had entered a plea of convenience, otherwise known as an *Alford* plea, his plea was the functional equivalent of a guilty plea and required the Florida court to determine that a factual basis existed to support his plea.  *See North Carolina v. Alford*, 400 U.S. 25, 37-38 & n.10, 91 S.Ct. 160, 167-68 & n.10, 27 L.Ed.2d 162 (1970) (holding that a court that accepts a guilty plea from a defendant who maintains his innocence does not commit a constitutional error, so long as the plea has a factual basis); *Troville v. State*, 953 So.2d 637, 638-40 (Fla. Dist. Ct. App. 2007) (providing that, so long as the guilty plea represents a voluntary and intelligent choice among alternative courses of action open to a defendant and a sufficient factual basis exists to support the plea of guilty, the collateral consequences flowing from an *Alford* plea are the same as those that flow from an ordinary plea of guilt).  To the extent Subil claims that he was innocent of the crime of grand theft or that there was no factual basis supporting his plea of guilty, his revocation proceeding was not the proper forum in which to attack his conviction for grand

18

theft. *Hofierka*, 83 F.3d at 363.  Thus, regardless of whether Subil entered a plea of convenience or actually acknowledged his guilt of committing the offense of grand theft, the district court did not abuse its discretion in finding that his actual conduct included his commission of grand theft, a Grade B violation.  *See* Fla. Stat. §§ 812.014(2)(c), 775.082(3)(d) (providing that grand theft of the third degree is a third-degree felony and is punishable by a term of imprisonment not to exceed five years).

Next, review of the record shows that the district court did not rely on Subil's medical condition in sentencing Subil.  Rather, the court agreed with Subil that he had a "medical issue" and referenced the government's earlier assertion that a term of imprisonment would allow him to receive the treatment that the government and Subil agreed that he needed.  Thus, we do not decide whether the Supreme Court's holding in *Tapia*, 564 U.S. at ___, 131 S.Ct. at 2392-93, applies in the context of a supervised release revocation hearing.

Next, the record does not indicate that the court penalized Subil for exercising his right to contest the revocation of his supervised release.  Rather, the court only commented on his refusal to accept responsibility.  Subil had requested leniency from the court, in part, based on his acceptance of responsibility for his past acts.  The court was permitted to weigh Subil's failure to express remorse

19

until sentencing against his actions taken during the hearing without relying on a constitutionally impermissible factor. *See United States v. Williams*, 627 F.3d 839, 845 (11th Cir. 2010) (providing that, where a defendant has denied his guilt in the face of evidence to the contrary, a court may consider that fact and decide that he is not entitled to a reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1). As Subil has not raised any other grounds for why his sentence is unreasonable, as is his burden, the district court did not abuse its discretion in imposing a sentence of 21 months' imprisonment. *See Talley*, 431 F.3d at 788.

For the foregoing reasons, we affirm the district court's revocation of Subil's term of supervised release and imposition of a sentence of 21 months' imprisonment.

**AFFIRMED.**