**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**John Henry McDUFFIE,
Defendant-Appellant.**

**No. 75–3656.**

United States Court of Appeals,
Fifth Circuit.

Nov. 10, 1976.

W. W. Larsen, Jr., Dublin, Ga., for defendant-appellant.

Ronald T. Knight, U. S. Atty., John D. Carey, Richard Nettum, Asst. U. S. Attys., Macon, Ga., for plaintiff-appellee.

Before GODBOLD, McCREE* and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

The appellant was charged in a five-count indictment with four other persons of conspiring to defraud the United States of tax revenue by violating certain laws pertaining to the manufacture and distribution of distilled spirits, of knowingly possessing an unregistered still, of engaging in the business of distilling spirits without posting the bond required by law and with intent to defraud the United States of tax revenue, and of knowingly possessing 175 gallons of non-tax-paid whiskey.[1] After his first trial ended in a mistrial, he was tried and convicted by a jury in the United States District Court for the Middle District of Georgia and sentenced to concurrent three year terms of imprisonment on each count. This conviction was reversed,[2] and he was retried in July 1975. Again convicted, he was sentenced to consecutive five year terms on two counts, to concurrent five year terms on two other counts, and on a fifth count to five years probation to commence on the expiration of the sentences on the other counts. On appeal, appellant argues that the district court (1) committed plain error in its instructions to the jury, (2) committed reversible error in refusing to disclose to counsel a written question received from the jury during deliberations, and (3) erred in relying on a report not disclosed to appellant to fashion a more severe sentence than was imposed after his earlier conviction. We find the first two contentions to be without merit, but the third is well made, requiring us to remand the case for resentencing.

I

On the afternoon of January 9, 1973, a fire broke out at a warehouse in Kathleen,

* Of the Sixth Circuit, sitting by designation.

1. *See* 26 U.S.C. §§ 5179(a), 5205(a)(2), 5601(a)(1), 5601(a)(4), 5602, 5604(a)(1), 7206(4) (1970).

2. *United States v. Miller,* 500 F.2d 751 (5th Cir. 1974).

Georgia. When the volunteer fire department and sheriff's officers arrived at the scene they discovered 175 gallons of illicit whiskey and a 7500 gallon-capacity distillery. The appellant and four others were subsequently indicted. Appellant was tried alone. At trial the government presented the testimony of the officers who discovered the distillery and two co-conspirators who had received immunity. The co-conspirators testified that, while they operated the still, the appellant and another co-conspirator were the ones who owned and managed it. It was the appellant, for example, who showed them how to make the mash and use the equipment. He told them where to pick up the supplies and deliver the whiskey, and he handled the money. The appellant was further implicated by proof that his fingerprint had been found on one of the jars discovered at the still.

Appellant's defense was to deny any involvement with the illicit still and to attack the credibility of the prosecution witnesses. It was argued that his employment full-time as a highway construction supervisor made it highly improbable that he was simultaneously running a large illicit whiskey business. To support this theory, appellant presented the testimony of his employer, one of his co-workers, and a state highway department inspector. Their testimony indicated that appellant usually worked a ten-hour day five days a week. The appellant did not testify.

■ As far as can be determined from the record, there was no request for instructions or any charge conference. Following argument of counsel to the jury, the court immediately instructed the jury, using the following portion of what is evidently its standard charge:

Now, as you have seen, there may be some conflict in the testimony, and if you find there is such a conflict then it is for you as the triers of the facts to weigh, compare and consider all of the testimony of all of the witnesses in the case, including the documentary and physical evidence, and determine where lies the truth of these disputed questions of fact.

It is your duty, if you can, to reconcile the testimony of all witnesses so that all witnesses shall have spoken the truth. If, however, you are unable to so reconcile the testimony, you may then reject the testimony of such witness or witnesses as you believe to be untrue or mistaken and give credence to the evidence that you think most worthy of believing.

Record, vol. III, at 203–204.

No objection to this or any portion of the charge was made before the jury retired to consider its verdict.[3]

After some deliberation the jury communicated the following written question to the court: "Ask for definition on control and possession—if partial control and possession would indicate guilt." Counsel's request to know the nature of the question was refused. On its own initiative and without receiving any input from counsel, the court proceeded to instruct the jury on the meaning of the terms "control" and "possession" and the distinction between actual and constructive possession. The court then inquired of counsel whether there were any objections. The ensuing colloquy between the court and defense counsel which we have set out in the margin clearly demonstrates the difficulty counsel was having in objecting to a supplemental charge without knowing the question to which the charge purported to be responsive.[4] Nevertheless, the court adhered to

3. The absence of an objection means, of course, that the instruction would only be grounds for reversal if it constituted plain error. *See* Fed. R.Crim.P. 30 & 52(b).

4. The exchange, occurring at sidebar, was as follows:

THE COURT: Are there any exceptions or additions to the answer to the jury's question?

MR. BOATRIGHT: I didn't exactly understand what the question was.

THE COURT: Well, the Court does not generally say what the jury's question is. I am going to file it with the Clerk and it will be available to you after the case is over.

MR. BOATRIGHT: Could we reserve the right to make exceptions to it later?

THE COURT: No sir.

its decision not to disclose the question. The jury retired again and eventually returned a verdict of guilty on all counts.

At the sentencing stage of the proceeding the defense presented no special requests and appellant declined to make a statement. The court then gave the following explanation of the sentence it was about to impose:

.  .  . the Court has in its possession the interview which you voluntarily gave to the Federal Bureau of Investigation and the Georgia Bureau of Investigation, and I would suggest to you, sir, that if your family knew the contents of that interview as we know it, that maybe their attitude would be different  .  ..

Frankly, the Court received a copy of that interview after you were tried this second go-round, and to say the least, Mr. McDuffie, the contents of that interview are startling and almost beyond belief.

The Court is not going to refer to the contents of that interview because it concerns matters that have not yet come to the public's attention. But I want to level with you and tell you that in that interview your own words portray a picture of you to this Judge that wasn't portrayed before we got that interview. You are an entirely different man from what the court thought when you were sentenced the last go-round  .  .  ..

And just so there won't be any misunderstandings, I am putting in a sealed envelope a copy of the probation report that the Court had the last time you were sentenced and I am putting in the same sealed envelope the copy of the interview

that you gave. It's going to be sealed. And I am certifying that I am basing the sentence on what's in this envelope so that in the event you choose to appeal the Court's actions, according to *North Carolina v. Pearce* [395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656], which sets the constitutional limitations on sentencing after retrial, so you will have the full record in there for it to be done.

.     .     .     .     .

As I read that interview I was almost tempted to send for you and your lawyer to talk with you about it. The only analysis I can have of the situation is that you are just trying to put off the misery of serving that time, or that you just don't want to face up to what you yourself admit to in your own interview.  .  .  .
Record, Vol. II, at 3–6.

At the conclusion of the statement the court imposed sentences which amounted to ten years of incarceration to be followed by five years of probation.

## II

■ The instruction to the jury quoted *supra* concerning its supposed duty to reconcile, if it could, the testimony of all the witnesses so that each shall have spoken the truth is verbatim the instruction considered in *United States v. Holland,* 526 F.2d 284 (5th Cir.), *petition for rehearing granted,* 537 F.2d 821 (5 Cir. 1976). Initially the *Holland* court held that this instruction was reversible error, for it incorrectly stated the jury's duty in assessing testimony and impermissibly invaded the province of the jury as the ultimate trier of fact.[5] On rehear-

MR. BOATRIGHT: I would like to except to it.
THE COURT: On what basis?
MR. BOATRIGHT: On the basis that it would be confusing and too insufficient in whole to apprise the jury of just what aiding and abetting is and what possession and control is and how it's related.
THE COURT: Even if the question calls for just that?
MR. BOATRIGHT: Yes sir. I don't know what the question was.
THE COURT: Yes sir, I know that.

MR. BOATRIGHT: I feel like the jury is confused with the charge as a whole and that there is something in there that I need to except to and I except.
THE COURT: Well, I believe when you see the question you will find out that I have answered it as fairly and fully as I know how to without reading to them the entire charge of the Court. Let that be filed as being a question presented to the Court and answered by the Court.
Record, Vol. III, at 234–236.

**5.** The *Holland* panel explained the error in the instruction as follows:

ing, though, the court concluded that in viewing the charge as a whole the error was harmless. In reaching this conclusion, the court pointed to the fact that the jurors were charged that they were the sole judges of the facts, the weight of the evidence and the credibility of the witnesses, and that nothing the court said was intended to interfere with their exclusive responsibility to determine the factual issues in the case. This qualifier was held to have cured the otherwise erroneous portions of the instructions.

Here the same qualifier was given verbatim in the instruction. Thus, unless the facts in this case show that the instruction was substantially more prejudicial to appellant than it was to the defendant in *Holland,* that decision controls. *See Davis v. Estelle,* 529 F.2d 437, 441 (5th Cir. 1976). Appellant strongly contends that it was. He commences his argument by pointing out that none of the witnesses called in his defense directly contradicted the testimony of any prosecution witness. Instead, the three defense witnesses testified only as to appellant's work habits and the long hours he spent at his place of work some distance away from the still site. He emphasizes that the main thrust of the defense was not that the prosecution testimony had been placed in direct conflict but that the government's witnesses lacked credibility. This coupled with the presumption of innocence formed the theme of appellant's jury argument for acquittal. Appellant strongly contends that, in these circumstances, to instruct the jury to reconcile the testimony of all the witnesses so that each of them shall have spoken the truth was tantamount to instructing it to believe the prosecution witnesses, since these witnesses' accounts of appellant's activity had not been expressly contradicted.

We are not persuaded by this argument. It should be recalled that, in *Holland,* the defense did not present *any* witnesses and that the main thrust of the defense was the same as in this case: the lack of credibility of the prosecution witnesses. It is also important to note that Holland's defense counsel objected to the instruction[6] while, here, the record fails to disclose any objection or any request for further instructions. The *Holland* panel found the instruction to be harmless error. In a case so similar, we fail to see how we can find it to be plain error.[7]

### III

The next issue raised by the appellant concerns the lower court's unusual

---

.   .   . the instruction is cousin-german to the discredited "presumption of truthfulness" charge, impermissibly conditioning the jury's right to disbelieve even uncontradicted testimony, *e. g., Farmer v. Caldwell,* 476 F.2d 22, 25 (5th Cir.), *cert. denied,* 414 U.S. 868, 94 S.Ct. 178, 38 L.Ed.2d 117 (1973), and suggests that, where the testimony of witnesses conflicts in any particular, all of one must be received and all of the other rejected. Such interference with the common-sense factfinding process by which jurors labor toward verdicts cannot be countenanced.

526 F.2d at 285–286.

6. The opinions in the *Holland* case do not give a detailed factual account of the trial. However, the record in *Holland* contains the following exchange prior to the jury's retirement:

THE COURT: Are there any exceptions or additions for the Government?

MR. ALMAND: None, Your Honor.

THE COURT: For the defendants?

MR. LARSEN: Yes sir. May it please the Court, for and on behalf of each of the four defendants, we except to the Court's charge as follows. First, the Court has charged the jury that it is the duty of the jury to reconcile—substantially to the effect, that it is the duty of the jury to reconcile the testimony of all witnesses so all speak the truth. If you cannot do so you are to believe those most worthy of belief. I recognize the principle of law there involved and the applicability of it in many types of cases. But in this case, may it please the Court, where all of the witnesses are Government witnesses, there are no witnesses on behalf of the defendants, we respectfully submit that this particular portion of the charge instructs the jury that they are to believe some of the Government's witnesses, at least. And we say that *that deprives the defendants of their presumption of innocence to a large extent, erroneously.*

Record, Vol. II, at 782.

7. *See supra* n. 3.

treatment of the question from the jury. The procedure that should have been employed is well established. When a communication is received from the jury, counsel should be informed of its substance and afforded an opportunity to be heard before a supplemental charge is given. *See, e. g., Rogers v. United States,* 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); *Gomila v. United States,* 146 F.2d 372 (5th Cir. 1944). We can perceive no justification for not following this procedure in this case. It is not enough to afford counsel an opportunity to object after the supplemental instruction is delivered. Fundamental fairness requires more. Unless counsel is advised of the contents of the jury's message he cannot evaluate the propriety or adequacy of the proposed supplemental charge, formulate objections or suggest additional instructions. In short, he cannot make an informed decision as to what course of action to take. We recognize that an error of this kind may, depending on the facts and circumstances of the case, be harmless. *See Rogers,* 422 U.S. at 40, 95 S.Ct. at 2095, 45 L.Ed.2d at 6. Unlike the situation in *Gomila,* the jury's question and the supplemental charge are now before us. It appears to us that the supplemental charge was distinctly responsive to the question and correctly stated the law. We find no prejudice to appellant, and, thus, the error is harmless.

## IV

■ Appellant's final contention is that the district court's imposition of a more' severe sentence following the second conviction violated the commands of *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). As the portion of the sentencing proceedings quoted *supra* indicates, after appellant was accorded the right of allocution the court announced that, subsequent to trial, it had received a copy of an interview appellant had purportedly given the F.B.I. The implication of the announcement was that appellant was about to receive a far more substantial sentence than he had received following the earlier conviction. The court viewed the matter to be so sensitive that it ordered the copy of the interview sealed. Neither it nor the substance of its contents was ever disclosed to appellant or his counsel.

We have reviewed the sealed document and can appreciate the court's concern that its subject matter not become public knowledge. But this concern, legitimate as it may have been, does not excuse the failure to disclose to appellant and his counsel the information which, in the court's view, required a more severe sentence to be fashioned. *Pearce* permits the enhancement of sentence after retrial only upon an affirmative showing of the factual basis for the heavier sentence:

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he received after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.
>
> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Id.* at 725–726, 89 S.Ct. at 2080–2081 (footnote omitted).

The teaching of *Pearce* is not satisfied merely by sealing the new information in an envelope for the benefit of the appellate court. While the appellate court is thereby

enabled to review the lower court's action in the light of the new facts, the procedure employed in this case is not calculated to allay a defendant's apprehension that there may be some retaliatory motivation on the part of the sentencing judge. Moreover, full appellate review is hampered because the court is unable to determine whether the information relied upon by the lower court is accurate. Here, for example, had appellant been advised of the parts of the F.B.I. interview which the district court felt demanded an increased sentence, he might have disputed the accuracy of the interview report, or raised some other critical point or even denied that the interview ever took place. On this record we can only speculate at best as to what might have developed in the sentencing proceedings had the court adequately informed the defense.[8]

██ It should not be overlooked that, outside the context of a *Pearce* resentencing situation, we have held "that at least where the trial court has explicitly relied upon presentence report information in assessing a sentence, 'fundamental fairness requires that a defendant be given at least some opportunity to rebut that information.' " *United States v. Horsley,* 519 F.2d 1264, 1266 (5th Cir. 1975), *quoting Shelton v. United States,* 497 F.2d 156, 159 (5th Cir. 1974). The obligation to disclose can be no less where, as here, we are dealing not with an initial sentencing procedure but with the possible imposition after retrial of a more severe sentence than that previously handed down. When that possibility is entertained, the court must inform the defendant and his counsel of the factual data upon which the court intends to rely and must give them an opportunity to rebut

or augment the data to the end that the sentence will not be constructed on a false foundation. Because the sentencing procedure in this case failed to meet this standard, appellant's sentence must be vacated. Accordingly, the judgment and sentence are vacated and the case is remanded for further proceedings not inconsistent with this opinion.

VACATED and REMANDED.

8. The government's rebuttal is two-fold: (1) since the report contains a transcript of an interview between investigators and appellant, he already knows the contents of the report and could not be prejudiced by nondisclosure; and (2) disclosure to the defendant is not required where it would have a harmful effect upon an ongoing investigation. These arguments are contradictory. If the defendant already knows the contents of the report, then disclosure to him could have no harmful effect on the investigation. The harmful effect argument is simply that the report should not be disclosed to third parties. Inappropriate disclosure to third parties is a risk that can be mitigated by the manner in which the district judge chooses to communicate the information to the defense and the care he takes to frame whatever protective orders may be indicated.