**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Cora Marie ARTUS,
Defendant-Appellant.**

**No. 78-1626.**

United States Court of Appeals,
Ninth Circuit.

Feb. 21, 1979.

Theresa A. Kristovich, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

Peter M. Horstman, Deputy Federal Public Defender (argued), Los Angeles, Cal., for defendant-appellant.

Before BROWNING and TANG, Circuit Judges, and CLAIBORNE,* District Judge.

PER CURIAM.

Cora Marie Artus appeals her conviction of escape, in violation of 18 U.S.C. § 751. On appeal she contends that her conviction by jury verdict was the result of prejudicial prosecutorial and judicial misconduct. The contention has merit and, accordingly, we reverse.

In March of 1977, Artus was released to a halfway house, a contract facility of the Federal Bureau of Prisons, in Santa Barbara, California. On October 8, 1977, a facility counselor formally cited her for two rule violations. She was scheduled to appear for a disciplinary hearing on these violations on October 12, 1977, but was found to be missing from the halfway house on the morning of the hearing. At trial, the Defendant based her defense upon the theory of entrapment, arguing that the administrators conspired to get rid of her and return her to the prison by citing her with minor technical violations, thus causing her to leave, although she did not have the intent to escape or remain free from custody.[1]

The record shows that the government did not introduce evidence to the effect that the Director of the Federal Bureau of Prisons had the authority either to effect or to delegate inter-facility transfers, without cause. However, in the course of her closing argument, the Government counsel commented as follows:

> "Ladies and gentlemen, Mr. Dziak or Mr. McDonald, the administrators of the halfway house, did not have to come up with some obscure scheme in order to get Cora Artus out of there. All they needed to do was file the form for her transfer to another institution, if they felt that that was necessary, if they simply wanted to get rid of her—as the defense has asserted to you today. They chose to follow what is a legal procedure, and that is to hold a disciplinary hearing.
>
> Ladies and gentlemen, I think this is something you should be made aware of and, that is, that under the law of the United States Supreme Court  . . ."[2]

The court subsequently instructed the jury. After the jury retired to deliberate, the Court received a note from the jury requesting instructions concerning some of the jury instructions and the prosecutor's closing argument. With counsel present and outside the presence of the jury, the trial judge stated that he would not reread the instructions, but simply speak to the jury foreperson about the problem. In the absence of further explanation as to how the judge would proceed, defense counsel did not object to the procedure. The following colloquy subsequently took place:

> Juror: "You said we could ask questions. The reason that I asked for the summation rebuttal by the prosecuting attorney, the question has been raised whether a person at the halfway house, whether it be Santa Barbara or any other correctional facility outside of the federal system, can they be transferred without having committed any disciplinary infraction or being written up?

---

* The Honorable Harry E. Claiborne, United States District Judge for the District of Nevada, sitting by designation.

1. This theory presently would have very little merit, in light of the Ninth Circuit's recent decision of *United States v. Jones*, 569 F.2d 499 (9th Cir., 1977), wherein we held that escape under 18 U.S.C. § 751 does not require proof of intent to avoid confinement, but merely proof of willful failure to remain within the limits of, or timely return to, confinement. 569 F.2d at 500–502. However, *Jones* had not been decided at the time of trial, the Court permitted the defense to be pursued, and it would have had some limited merit at that time. Cf. *United States v. Michelson*, 559 F.2d 567, 568–571 (9th Cir., 1977).

2. Defense counsel objected to the argument, but not on the grounds that the prosecutor was arguing facts not in evidence. The Court appeared to overrule the objection.

The Court: "It is discretionary with the Bureau of Prisons as to the place where an individual is to be confined. Transfers do take place, according to the policy determined by the Bureau of Prisons, and the reason for the transfer will be one that will be determined by the Bureau of Prisons, and it would be a reason that would be sufficient to the Bureau and not necessarily because of any incident that may have taken place.

Juror: "Would this be generated by the director of the particular halfway house?

The Court: "The halfway house works as indicated under contractual relationship with the Bureau of Prisons. There is communication back and forth between the responsible officer at the halfway house or the Bureau of Prisons and so on. That communication that may have represented what act, some act or transfer on the part of the Bureau, but is that interchange that does take place by reason of the contractual relationship that exists.

Juror: "That answers our question."

After the jury withdrew, the defense objected to the colloquy on the grounds that the Court answered factual inquiries by a juror which related to facts not in evidence. Subsequently, Defense counsel moved twice for a mistrial on this basis, the Court denied the motions, and the jury returned a verdict of guilty.

The question of the director's transfer authority is one of law and of fact. While the policy statements of the Federal Bureau of Prisons are judicially noticeable and contain the director's authority to transfer inmates, they do not reveal whether the authority is actually delegated, in what manner, and what restrictions are placed on the delegees. These questions, as well as the questions of whether the counselors acted within the scope of a lawful delegation, are ultimately questions of fact, and the evidence before the jury was not probative of these facts.

■ Thus, the statements by both the prosecutor and the Court were made in plain error. A prosecutor should not misstate the law in closing argument [3] (*United States v. Segna*, 555 F.2d 226, 231 (9th Cir., 1977)), and also must refrain from introducing evidence not in the record (*United States v. Martinez*, 514 F.2d 334, 343 (9th Cir., 1975)). Even though Defense counsel did not enter a timely objection to the statements, they are nonetheless reviewable because the error is plain. *United States v. Lopez*, 575 F.2d 681, 685 (9th Cir., 1978).

■ The Court's statements to the jury were made in violation of F.R.C.P. Rule 43, for the reason that the Court did not adequately consult with counsel prior to giving the supplemental instructions. The fact that the Court told Defense counsel that "he would speak to [the foreperson] about the problem" is not satisfactory. The interchange between jury and judge should be surrounded with formalities so that the Defendant has an adequate opportunity to evaluate the propriety of the proposed response or instruction, formulate objections, or suggest a different response. *United States v. Schor*, 418 F.2d 26, 30 (2d Cir. 1969); *United States v. McDuffie*, 542 F.2d 236, 240–241 (5th Cir. 1976); *Rogers v. United States*, 422 U.S. 35, 39–40, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975).

■ Given the plain error, the question now becomes whether the errors are "seriously prejudicial," such as to require reversal. *United States v. Lopez, supra* ; *United States v. McDuffie, supra.* We hold that they are, as it appears that the probability is very high that the jury's deliberations were affected by them. The prosecutor's

---

**3.** By not explaining the effect of delegation under the Federal Bureau of Prisons policy statements, the prosecutor did not fairly explain the law in this regard to the jurors, and thus misstated it. While not crucial to this appeal, it should also be noted that in the same closing argument the prosecutor misstated the law viz. a prisoner's due process rights at disciplinary hearings. See *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

improper closing statements confused the jury on the issues of intent and entrapment, and the improper resolution by the trial judge undermined the entrapment defense. While it is true that evidence existed, independent of the questions surrounding the director's authority to transfer and to delegate such authority, sufficient to convict, it appears likely that the jury based its verdict upon the prosecutor's and judge's remarks.

Reversed.