**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

BLADIMIR MARTINEZ,
*Defendant-Appellant*.

No. 15-50205

D.C. No.
3:14-cr-00117-BEN-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted August 1, 2016
Pasadena, California

Filed March 10, 2017

Before: Stephen Reinhardt and Kim McLane Wardlaw,
Circuit Judges, and Ronald M. Whyte,[*] District Judge.

Opinion by Judge Wardlaw

---

[*] The Honorable Ronald M. Whyte, United States District Judge for
the Northern District of California, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel vacated a sentence for being a removed alien found in the United States, struck a special finding by the jury that escalated the statutory maximum sentence from two years to twenty, and remanded.

The panel held that the district judge's failure to notify and consult with defense counsel before responding to a jury question seeking guidance on the significance of the special finding as to the defendant's removal date violated Fed. R. Crim. P. 43(a) and the defendant's Sixth Amendment right to counsel.

The panel held that the judge's error was not harmless beyond a reasonable doubt because much of the government's documentary evidence concerning the defendant's prior removal contained demonstrable errors, and because defense counsel, had she been consulted, would have specifically requested that the district court instruct the jury that the government was required to prove the removal date beyond a reasonable doubt.

The panel instructed that the government, on remand, may elect to retry the removal date before a sentencing jury or request that the district court resentence the defendant under the two-year sentencing provision in 8 U.S.C. § 1326(a). The

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

panel instructed that the case be reassigned to a different district judge.

## COUNSEL

Doug Keller (argued), Federal Defenders of San Diego, Inc., San Diego, California for Defendant-Appellant.

Mark R. Rehe (argued), Assistant United States Attorney, Laura E. Duffy, United States Attorney, and Peter Ko, Assistant United States Attorney, Chief, Appellate Section, Criminal Division, San Diego, California, for Plaintiff-Appellee.

## OPINION

WARDLAW, Circuit Judge:

Bladimir Martinez appeals his conviction by jury trial and his sentence for being a removed alien found in the United States in violation of 8 U.S.C. § 1326. During its deliberations, the jury sent a note to the judge seeking guidance on the significance of a special finding as to Martinez's removal date. The special finding had significance only with respect to the sentence imposed by the jury. Without responding in open court and without notifying or consulting counsel, the judge penned his own response on the note and returned it to the jury. Between the time the jury sent its note and the return of the verdict, an eight-minute time period elapsed. The jury found Martinez guilty of illegal reentry and specially and separately found that he was "removed subsequent to December 3, 2010," thereby

escalating the statutory maximum sentence from two years to twenty. The court's failure to consult Martinez's counsel before responding to the jury note violated Federal Rule of Criminal Procedure 43 ("Rule 43") and the Sixth Amendment. Because much of the government's documentary evidence concerning Martinez's prior removal contained demonstrable errors, and because defense counsel, had she been consulted, would have specifically requested that the trial court instruct the jury that the government was required to prove the removal date beyond a reasonable doubt, the district judge's error was constitutionally harmful. We therefore vacate Martinez's sentence and strike the special finding. On remand, the government may elect to retry the removal date issue before a sentencing jury, or it may request that the district court resentence Martinez under the two-year sentencing provision in 8 U.S.C. § 1326(a).

## I.

In December 2013, Border Patrol agents apprehended Martinez while he was attempting to hide himself in an area just north of the United States–Mexico border. The government charged Martinez by information with one count of being a "removed alien found in the United States," in violation of 8 U.S.C. § 1326. The information also charged that Martinez had been removed "subsequent to December 3, 2010," the date he was convicted for felony commission of a lewd or lascivious act on a child under the age of 14 under California Penal Code § 288(b)(1).

The central issue at trial was alienage. In a one-day evidentiary phase, the government adduced evidence that Martinez was removed from the United States in 2012 and reentered in 2013 as a noncitizen without permission to

reenter. Defense counsel did not call any witnesses, but challenged the accuracy of the prosecution's immigration documents which had been created by government agents during Martinez's prior removal and his 2013 apprehension. The documents indicated that Martinez had told immigration officers he was not a U.S. citizen but inconsistently stated he was a citizen of Guatemala and Mexico.

On the second day, the court gave the jury its initial instructions, which addressed the one charge, its elements, the government's burden of proof beyond a reasonable doubt, and the requirement of unanimity. These instructions failed to mention that the jury would be asked to make a finding concerning Martinez's removal date or that the government had to prove the removal date beyond a reasonable doubt.

Following closing arguments, the court delivered its "final instructions." The court also reviewed the verdict form with the jury. The judge identified the two questions on the form: whether or not Martinez was guilty of being a removed alien found in the United States, and, if so, whether Martinez had been "removed from the United States after December 3rd, 2010." The judge did not tell the jury that the government had to prove that Martinez was removed after December 3, 2010 beyond a reasonable doubt, but did tell the jury that to respond yes to the question it must unanimously agree that Martinez had been removed after that date. The judge also told the jury that if it needed to communicate to the court, it could do so by written note, but that any response might be delayed because the court would "consult with the lawyers before answering it."

At 10:40 a.m., the jury sent a note to the court that asked, "On the jury form, what significance is the date of December

3rd, 2010? (on the portion that asks if he was deported subsequent to the date of 12/3/2010)." The court wrote its response directly on the jury note, stating, "It is a matter for the court to consider, not the jury. The jury has to consider whether the defendant was deported or removed after that date."

Eight minutes after it had sent its first note, at 10:48 a.m., the jury sent a second note announcing that it had reached a verdict. The judge convened counsel, but before bringing in the jury, informed counsel that he had received a note from the jury. He stated, "I didn't think it was important to bring [counsel] back in to answer this question, so I answered it myself." The judge also told counsel, "So you know, if you have a problem with that, I guess you'll take it up with the Court of Appeals." The jury found Martinez guilty and that he was removed after December 3, 2010. The court sentenced Martinez to 57 months in prison, with two years of supervised release. Defense counsel apparently had a problem with the court's decision not to consult with counsel before answering the jury's question, and this is the resulting appeal.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We review Martinez's Rule 43 and Sixth Amendment claims de novo. *See United States v. Danielson*, 325 F.3d 1054, 1066 (9th Cir. 2003); *see also United States v. Rosales-Rodriguez*, 289 F.3d 1106, 1109–11 (9th Cir. 2002).[1]

---

[1] The government argues that plain-error review applies because Martinez never objected below. Counsel for Martinez, however, did not have the opportunity to object before the court answered the jury's

## III.

The district court violated Federal Rule of Criminal Procedure 43(a) and Martinez's Sixth Amendment right to counsel by failing to notify and consult with his counsel before responding to the jury's question.

### A. Rule 43(a)

Rule 43 provides a defendant an expansive right to be present throughout his trial. Though that right is also guaranteed by the Constitution, Rule 43 codified a common-law right to be present that is "broader than the constitutional right alone." 3B Charles Alan Wright et al., *Federal Practice and Procedure* § 721 (4th ed. 2016). Rule 43 outlines when the defendant's presence is required (generally every critical stage of the trial), when it is not, and when presence may be waived.

It is well established that a district court's failure to notify defense counsel about a jury note and to give counsel the opportunity to be heard before the court responds violates Rule 43. In *Rogers v. United States*, 422 U.S. 35 (1975), the deliberating jury sent a note to the court inquiring "whether

question. Moreover, the court told counsel that if it had a problem with the court's communication with the jury, "[T]hat is the way it goes," and that Martinez could "take it up with the Court of Appeals." Obviously, objecting after the jury rendered its verdict with the influence of the court's unilateral response would have been futile. "A failure to raise a futile objection does not waive the objection." *United States v. Kyle*, 734 F.3d 956, 962 n.3 (9th Cir. 2013); *cf. United States v. Barragan-Devis*, 133 F.3d 1287, 1289 (9th Cir. 1998) (reviewing de novo a claim similar to Martinez's where defense counsel did not learn about the jury note until after the verdict and did not object).

the court would accept the Verdict—Guilty as charged with extreme mercy of the Court." *Id.* at 36 (internal quotation marks omitted). The court did not alert the defendant or his counsel and instead instructed the court's marshal "to advise the jury that the [c]ourt's answer was in the affirmative." *Id.* (internal quotation marks omitted). Five minutes later, the jury returned a guilty verdict recommending the court's mercy. *Id.* at 37. The Supreme Court held that the district court's ex parte response to the jury's "request for further instructions" violated Rule 43, which required that the message be "answered in open court," and that defense counsel be "given an opportunity to be heard before the trial judge responded." *Id.* at 39.

While the *Rogers* Court noted that "a violation of Rule 43 may in some circumstances be harmless error," the Court determined that both "the nature of the information conveyed to the jury, in addition to the manner in which it was conveyed," rendered it prejudicial. *Id.* at 40. Specifically, the district court should have, "[a]t the very least," told the jury that its recommendation for mercy was not "binding in any way." *Id.* The Court also noted that, after deliberating for almost two hours, the jury returned its verdict five minutes after learning that it could recommend mercy, which strongly suggested that the district court's response induced unanimity. *Id.*

The *Rogers* Court relied on two earlier decisions in which the Court had found error under similar facts, but by reasoning from the principles attendant to the orderly conduct of a jury trial, including "the right to be heard." The first decision, *Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76 (1919), involved a civil suit for negligence. *Id.* at 77. There, during deliberations, the jury sent a note to the district court

asking whether the plaintiff could be found contributorily negligent, and the court replied in writing with supplementary instructions. *Id.* at 80. The court did so in the absence of the parties and their counsel, and without calling the jury into open court. *Id.* The Court wrote that the supplementary instructions "ought to [have] be[en] given either in the presence of counsel or after notice and an opportunity to be present." *Id.* at 81. It explained that "the orderly conduct of a trial by jury, essential to the proper protection of the right to be heard, entitles the parties . . . to be present in person or by counsel at all proceedings from the time the jury is impaneled until it is discharged." *Id.* The Court thus reversed the judgment and remanded the case to the district court, noting that "erroneous rulings are presumptively injurious, especially those embodied in instructions to the jury." *Id.* at 82.

The *Rogers* Court also relied on *Shields v. United States*, 273 U.S. 583 (1927), which involved a criminal prosecution. In that case, the jury sent a note to the district court during deliberations stating that it had reached a verdict for five of the eight defendants. *Id.* at 584. The court replied in writing that the jury must reach a verdict as to all of the defendants. *Id.* Neither the defendants nor their counsel were advised of the communications, nor were the communications made in open court. *Id.* at 585. The Supreme Court remanded the case for a new trial, explaining that its holding followed a fortiori from the rule laid out in *Fillippon*, which required, "especially in a criminal case," that jury instructions be given in the presence of counsel or after notice and an opportunity to be present. *Id.* at 588–89.

In our circuit, we have held that a court violates Rule 43 not only when it fails to consult counsel about a jury note, but

also when it does so inadequately. In *United States v. Artus*, 591 F.2d 526 (9th Cir. 1979), the jury sent a note to the court asking about the jury instructions and the government's closing argument, in which the prosecutor had introduced facts not in evidence. *Id.* at 527. The court informed counsel that it would speak to the jury foreperson. *Id.* The court did so, answering at length several factual inquiries from the foreperson about the case. *Id.* at 528. We held that, even though the court informed counsel that it would answer the foreperson's questions beforehand, the court violated Rule 43 because it "did not adequately consult with counsel prior to giving the supplemental instructions." *Id.* We reasoned that "[t]he interchange between jury and judge should be surrounded with formalities so that the Defendant has an adequate opportunity to evaluate the propriety of the proposed response or instruction, formulate objections, or suggest a different response." *Id.* On the basis of the court's violation of Rule 43 and the government's improper statements during closing argument, we reversed the conviction. *Id.* at 529.

## B. Sixth Amendment

We have held that the Sixth Amendment, in addition to Rule 43, requires a court to consult defense counsel when it receives an inquiry from the jury.[2] In *United States v.*

---

[2] Martinez bases his constitutional claim on the Sixth Amendment. We have sometimes situated similar claims under the Sixth Amendment's right to counsel, *see Musladin v. Lamarque*, 555 F.3d 830, 836 (9th Cir. 2009), and at other times the right to confront witnesses, *see Rosales-Rodriguez*, 289 F.3d at 1109–10. The scope of a defendant's right to be notified and heard regarding a jury note has not varied, however, based on the specific clause we have invoked. Furthermore, we have held that Fifth

*Barragan-Devis*, a single juror sent a note to the court during deliberations asking about the evidence showing the defendant's intent to possess and distribute heroin. 133 F.3d at 1288–89. Without consulting counsel, the court chose to not respond. *Id.* at 1289. We held that the court's decision violated the defendant's Sixth Amendment "right to be represented by his attorney at . . . a conference" during which defendant's counsel could have argued in favor of a reply. *Id.*

We affirmed the conviction, however, applying *Chapman v. California*, 386 U.S. 18 (1967), and finding that the error was harmless beyond a reasonable doubt. *Barragan-Devis*, 133 F.3d at 1289–90. To determine whether the error was harmless, we considered the three factors identified in *United States v. Frazin*:

> First, we consider the probable effect of the message actually sent, second, the likelihood that the court would have sent a different message had it consulted with appellants beforehand and third, whether any changes in the message that appellants might have obtained would have affected the verdict in any way.

*Id.* at 1289 (quoting *Frazin*, 780 F.2d at 1470–71). We concluded that the error was harmless because the court's silence likely did not influence the jury, the jury previously received the relevant jury instructions regarding intent, and the note "d[id] not reveal any legal disorientation on the part

---

Amendment due process provides a similar guarantee. *See United States v. Frazin*, 780 F.2d 1461, 1469 (9th Cir. 1986).

of the juror or the jury" but rather "reveal[ed] some difficulty in assessing the probative value of the evidence." *Id.* at 1290.

In *United States v. Rosales-Rodriguez*, we extended this Sixth Amendment right to require trial courts to consult counsel about the court's communications to a deliberating jury, even when those communications are not initiated by the jury. There, the court sent an unsolicited note to the jury in the absence of counsel and the parties. *Rosales-Rodriguez*, 289 F.3d at 1109. The note informed the jury that if deliberations were not concluded by Friday at 4:30 p.m., an alternate juror would be substituted for a deliberating juror who had a conflict the following week, and deliberations would have to begin anew. *Id.* We concluded that the note was a supplementary instruction that the court should have reviewed with counsel, because counsel might have objected to the instruction or sought alternative language. *Id.* at 1110. We then determined that the failure to give counsel the opportunity to be heard was both a constitutional and statutory violation.[3] *Id.* at 1110–11. Nevertheless, the violation was harmless beyond a reasonable doubt because the jury reached its verdict by Friday at 11:00 a.m., suggesting that the jury had no difficulty reaching a verdict, and would have returned it well before 4:30 p.m. regardless of the note. *Id.* at 1111.

---

[3] We noted that "[t]he constitutional right, which is the right to be present at every 'critical stage' of the trial, is based in the Fifth Amendment Due Process Clause and the Sixth Amendment Right to Confrontation Clause." *Id.* at 1109.

## IV.

The district court violated Martinez's constitutional and statutory rights by failing to notify counsel of the jury note and to give counsel the opportunity to be heard during the preparation of the response.

Martinez argues that this error was structural, requiring automatic reversal under *United States v. Cronic*, 466 U.S. 648 (1984). He cites *Musladin v. Lamarque*, 555 F.3d 830 (9th Cir. 2009), and *United States v. Mohsen*, 587 F.3d 1028 (9th Cir. 2009), two recent cases in which we found the failure to consult counsel before responding to a jury note constitutional error, but did not hold that the error was structural. Indeed, we have never held that such error is structural error under *Cronic*.

In *Musladin*, a state capital case on habeas review, we considered whether clearly established federal law existed requiring consultation with counsel when the court receives a mid-deliberations inquiry from the jury. 555 F.3d at 833–35. To determine whether the mid-deliberations communication constituted a *Cronic* "critical stage" of trial, we considered whether it was a stage that "held significant consequences for the accused."[4]    *Id.* at 839

---

[4] Our circuit seems to have muddled the analysis of which trial stages are "critical stages" so as to trigger Sixth Amendment rights and which are "critical stages" so that the absence of counsel during the stage is structural error.

We have articulated a three-factor test for determining whether a stage of a criminal proceeding is a "critical stage" during which the defendant has a Sixth Amendment right to counsel: whether during that stage, "(1) 'failure to pursue strategies or remedies results in a loss of

significant rights,' (2) 'skilled counsel would be useful in helping the accused understand the legal confrontation,' and (3) 'the proceeding tests the merits of the accused's case.'" *Hovey v. Ayers*, 458 F.3d 892, 901 (9th Cir. 2006) (quoting *Menefield v. Borg*, 881 F.2d 696, 698–99 (9th Cir.1989)).

The Supreme Court has held that a "critical stage" under *Cronic* is "a step of a criminal proceeding, such as arraignment, that h[olds] significant consequences for the accused." *Bell*, 535 U.S. at 696. In at least one case, we melded the two "critical stage" determinations together, suggesting that a Sixth Amendment violation involving the absence of counsel always requires automatic reversal. *See United States v. Hamilton*, 391 F.3d 1066, 1070 (9th Cir. 2004). In several other cases, we have recognized that the *Cronic* "critical stage" determination is separate but nevertheless used the *Hovey* test for determining whether a stage implicates the Sixth Amendment. *See, e.g.*, *McNeal v. Adams*, 623 F.3d 1283, 1289 (9th Cir. 2010); *United States v. Benford*, 574 F.3d 1228, 1232–33 (9th Cir. 2009). In *McNeal v. Adams*, for example, we stated that we were "issu[ing] th[e] opinion to clarify the difference between a stage at which the defendant has a right to counsel, *see Mempa v. Rhay*, 389 U.S. 128, 134 (1967), and a critical stage requiring per se reversal if counsel is absent, *see United States v. Cronic*, 466 U.S. 648, 658-59 (1984)." 623 F.3d at 1285. The opinion in *McNeal* nevertheless applied the test from *Hovey* to determine whether the hearing at issue was a *Cronic* "critical stage." Judge Berzon wrote separately to clarify the distinction:

> I believe the majority confuses the "critical stage" standard applicable to *United States v. Cronic*, 466 U.S. 648 (1984) with the separate "critical stage" standard applicable to all claims under the Sixth Amendment. Put simply, the majority erroneously treats the two as the same, when they are not. The standard applicable in the first instance is "any stage of a criminal proceeding where substantial rights of a criminal accused may be affected," *Hovey v. Ayers*, 458 F.3d 892, 901 (9th Cir.2006) (citation and quotation marks omitted), while that applicable in the second instance is whether the denial of counsel at a given stage holds such "significant consequences" for the overall

(quoting *Bell v. Cone*, 535 U.S. 685, 695–96). We concluded that it did, explaining that the "'stage' at which the deprivation of counsel may be critical should be understood as the *formulation* of the response to a jury's request for additional instructions, rather than its delivery." *Id.* at 842. Finding that this principle was not clearly established federal law, however, we held that because the court simply referred the jury to the prior instructions, instructions that defense counsel had participated in formulating, it would not be unreasonable to conclude that this was not a *Cronic* critical stage. *Id.* at 842–43. In so stating, and in a series of footnotes, we distinguished among the types of jury inquiries that might or might not trigger a critical stage, such as rereading the prior instructions, *see Hudson v. Jones*, 351 F.3d 212, 217 (6th Cir. 2003), rereading testimony, *see United States v. Toliver*, 330 F.3d 607, 614–15 (3d Cir. 2003), or providing supplemental instructions, *see French v. Jones*, 332 F.3d 430, 438 (6th Cir. 2003), suggesting a fact-specific inquiry somewhat at odds with the concept of structural error.[5] *Musladin*, 555 F.3d at 842.

---

proceeding that a prejudice inquiry is impractical, *see Musladin v. Lamarque*, 555 F.3d 830, 839-40 (9th Cir. 2009).

*McNeal*, 623 F.3d at 1289–90 (Berzon, J., concurring in the judgment) (citations omitted).

[5] In *Musladin*, we explained how other circuits have treated a court's mid-deliberations communications with the jury. In the First and Sixth Circuits, the delivery of supplemental jury instructions, but not previously read and agreed-to instructions, is a *Cronic* critical stage. *See Hudson*, 351 F.3d at 217; *French*, 332 F.3d at 438; *Curtis v. Duval*, 124 F.3d 1, 4–5 (1st Cir. 1997)). The Fifth Circuit has held that a court's failure to consult counsel when it refers the jury to previous instructions does not require automatic reversal. *United States v. Hillsman*, 480 F.3d 333, 336 (5th Cir.

In *Mohsen*, after concluding the court erred by failing to consult the parties or counsel before responding to the jury's request to see the indictment with the "specific charges," we determined that the error was harmless beyond a reasonable doubt. 587 F.3d at 1031. We rejected Mohsen's argument that answering a jury's question without consulting counsel is always structural error requiring reversal, stating that in *Musladin* "[w]e never suggested that all errors regarding jury communications during deliberations were subject to automatic reversal." *Id.* at 1032. We distinguished the jury request in *Musladin* from that in *Mohsen* because "[u]nlike the communication in *Musladin*, the jury note [in *Mohsen*] was not a question about the law governing the jury's deliberations." *Id.* Nor did the note in *Mohsen* make any "substantive inquiry about the facts or the law," distinguishing it from jury notes in other previous cases. *Id.* (citing *Frantz v. Hazey*, 533 F.3d 724, 741–42 (9th Cir. 2008) (en banc)). We then cited three cases in which we had found a court's ex parte response to the jury to be harmless error: *Rosales-Rodriguez*, which involved a court's unsolicited supplementary instruction regarding the substitution of an alternate juror, 289 F.3d at 1110; *Barragan-Devis*, in which the court chose not to respond to a note from a single juror, 133 F.3d at 1289; and *Frazin*, in which the court responded to a note that the jury was deadlocked with an instruction to continue deliberations, 780 F.2d at 1469. *Mohsen*, 587 F.3d at 1032. Thus, our previous cases suggest that the question whether the failure to consult counsel about a mid-deliberations jury note is structural error turns on both the

---

2007). And the Third Circuit has held that providing record testimony without consulting counsel is not structural error. *Toliver*, 330 F.3d at 614–15.

nature of the jury's request and the need for counsel's participation in formulating a response.

Here, the jury was required to find beyond a reasonable doubt that Martinez was removed after December 3, 2010, the date he was convicted of the predicate aggravated felony. If the jury so concluded, the statutory maximum sentence for his illegal reentry conviction would jump from two to twenty years under 8 U.S.C. § 1326(b)(2). Factual determinations that "increase[] the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[6] *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *see also United States v. Guerrero-Jasso*, 752 F.3d 1186, 1190 (9th Cir. 2014) ("As applied to § 1326, the *Apprendi* principle requires that to trigger § 1326(b)'s twenty-year-maximum sentence, facts establishing that the removal occurred *after* an aggravated felony conviction must be admitted by the defendant or proved to a jury.").

---

[6] The jury need only answer the question whether the removal occurred after the date of conviction. Under *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), the jury was not required to find that Martinez in fact suffered the conviction. *Id.* at 226; *see also United States v. Pacheco-Zepeda*, 234 F.3d 411, 415 (9th Cir. 2000) (holding that, under *Almendarez-Torres*, the government was not required to "include [the defendant's] prior aggravated felony convictions in the indictment, submit them to a jury, or prove them beyond a reasonable doubt" for a 8 U.S.C. § 1326(b)(2) sentence enhancement). Therefore, at trial, the government did not present evidence about Martinez's previous conviction, and the jury was thus unaware during deliberations of what December 3, 2010 represented. Martinez contends, "for preservation purposes," that the Sixth Amendment required the government to prove beyond a reasonable doubt to the jury the fact of his conviction. He recognizes, however, that the Supreme Court previously rejected that argument in *Almendarez-Torres*. We do so as well.

We need not decide in this case, however, whether the judge's ex parte response to a mid-deliberations jury note about the significance of an *Apprendi* sentencing factor was structural in nature because we find that the constitutional error was not harmless beyond a reasonable doubt under the three-part *Frazin* test. Even if we were to determine that the judge's formulation of his response to this jury note, which dealt only with sentencing, was a "critical sentencing stage," the result would be the same: we must vacate Martinez's sentence and remand for resentencing. *United States v. Yamashiro*, 788 F.3d 1231, 1235–36 (9th Cir. 2015) (vacating sentence for structural error where defendant was deprived of counsel during victim's allocution at sentencing proceeding). An error, constitutional or otherwise, that relates solely to sentencing does not require the vacation of a conviction. *See id.*; *see also Robinson v. Ignacio*, 360 F.3d 1044, 1061 (9th Cir. 2004) (granting writ of habeas corpus and remanding for resentencing without performing harmless error analysis).

## A. *Probable effect of the message actually sent*

A court's message to a deliberating jury inevitably influences the jury's analysis. "Particularly in a criminal trial, the judge's last word is apt to be the decisive word." *Frantz*, 533 F.3d at 742 (quoting *Bollenbach v. United States*, 326 U.S. 607, 612 (1946)). For that reason, when a court receives a jury note, how the court's "reply . . . [is] worded" can have just as much impact as the court's decision, for example, whether or not to grant the jury's request to see evidence. *Id.* Even "'analytically correct' answers to a jury may unnecessarily—and improperly—influence a jury." *Id.* (quoting *Arizona v. Johnson*, 351 F.3d 988, 994 (9th Cir. 2003)).

The unique circumstances surrounding the removal date finding likely heightened the impact of the court's message. The jury did not learn that it would need to make a special finding about Martinez's removal date until just before deliberations began.  And the court gave only a brief instruction regarding that finding, stating that the jurors had to unanimously agree that Martinez was removed after December 3, 2010.  The court never instructed the jury that this finding, like the elements of the crime itself, had to be proven beyond a reasonable doubt by the government.

The court's message, though technically accurate to those versed in the law who would likely interpret it as referencing sentencing, was misleading to the jury.  In reply to the jury's question, the court stated, "It is a matter for the court to consider, not the jury.  The jury has to consider whether the defendant was deported or removed after that date."  The response was confusing—it was internally inconsistent because it both told the jury that the date was a matter for the court to consider and then said it was for the jury to consider. Moreover, the court told the jurors they needed only to *consider* when Martinez was removed, not that they needed to determine whether the government proved the removal date beyond a reasonable doubt.  Further, the message suggested that, unlike the determination of guilt, the court and jury shared the factfinding task concerning the removal date.

That the court's message caused the jury to quickly examine the evidence of the removal date under an impermissible burden of proof is made more probable by the lapse of only eight minutes between the jury note and its return of the verdict—time which included getting the note to the judge, the judge thinking about and then writing the response, and the delivery of the judge's response. Indeed, in

*Rogers*, the Supreme Court held that the return of a jury verdict only five minutes after the court's message "strongly suggest[ed] that the trial judge's response may have induced unanimity." 422 U.S. at 40.

The court's response here was different in kind from the responses in cases where we have found a court's error harmless. The response was unlike that in *Barragan-Devis*, where the court chose not to respond to a single juror's note. 133 F.3d at 1289. It was also unlike that in *Mohsen*, where the court refused to provide a copy of the indictment because the verdict form in front of the jurors contained the same information. 587 F.3d at 1031. In both of those cases, the court's responses on their face made it highly unlikely that the jury was affected in such a way as to prejudice the defendant. The response here was also unlike that in *Rosales-Rodriguez*, where the court informed the jury that one juror had a conflict the following week. 289 F.3d at 1109. In that case, the court's response certainly could have caused the jury to rush to a verdict, but other evidence dissuaded us that the jury was in fact pressured to do so.

Instead, the circumstances here are similar to those in which a court's ex parte response was found to be constitutionally harmful. The court did not refuse to respond or refer to previously-agreed instructions. Rather, it crafted a new instruction to the jury. In *Artus*, we held that the court's new instructions, delivered outside the presence of counsel, prejudiced the defendant so as to require reversal. 591 F.2d at 528–29. Similarly, in *Rogers*, the Supreme Court held that the district court's supplementary instruction, telling the jury that it could recommend mercy in sentencing, was not harmless beyond a reasonable doubt. 422 U.S. at 40. Indeed, two other circuits have recognized that a new

instruction delivered without consulting counsel is so likely to be prejudicial that those circuits require automatic reversal for such error. *See French*, 332 F.3d at 438 (Sixth Circuit); *Curtis*, 124 F.3d at 4–5 (First Circuit).

B.  *The likelihood that the court would have sent a different message if defense counsel were consulted*

Consulting with counsel on the jury note likely would have produced a different response. The jury's question pertained to a finding that could increase Martinez's maximum sentence from two to twenty years, so there is little doubt that defense counsel would have taken care to ensure that the court answered the note in a way that would not prejudice Martinez. Martinez contends that his counsel would have, at a minimum, asked that the court's response "provide proper guidance on the deliberative significance of the date finding, including that it had to be proven beyond a reasonable doubt." That would have been a reasonable proposal in light of the court's prior omissions of the government's burden of proof for the removal date finding. Additionally, defense counsel would have ensured that the jury was instructed not merely to "consider" the date of removal, but to make an affirmative determination about it. Further, counsel likely would have recommended that the note exclude any mention of the court's role in considering the previous conviction or removal dates. By telling the jury that dates were "a matter for the court to consider" in addition to the jury, the note wrongly indicated that the jury shared its factfinding task with the court. There is no reason to think that the judge would have refused to incorporate counsel's uncontroversial suggestions, which would have resulted in a clearer and more accurate response to the jury's question.

*C.  Effect on the verdict*

A proper response could have made the difference between a two-year prison sentence and the four-year, nine-month prison sentence the court imposed.  Much of the documentary evidence the government submitted contained inaccuracies, which the government was forced to concede.  Had the jury been specifically instructed on the burden of proof as to the removal date, it might well have found that the government did not meet its burden.

The government introduced several documents concerning Martinez's previous removal.  Among other things, these exhibits recorded immigration agents' interviews with Martinez leading up to his removal and documented his exit from the United States.  All of the forms appeared to have been completed in 2012.  In addition to proving at trial that Martinez previously had been removed, the government used the forms to prove Martinez's alienage, because some of the forms claimed that Martinez had admitted to immigration agents that he was a noncitizen.

As part of his defense strategy of attacking the government's evidence of alienage, Martinez was able to demonstrate errors on the documents from his removal in 2012, as well as from his apprehension in 2013.  His counsel showed, for example, that a report concerning Martinez's apprehension in 2013 incorrectly stated that he was detained in July rather than December.  Counsel also pointed out that Martinez's 2012 warrant of removal incorrectly listed the immigration agent as "Johnny Williams" instead of "Robin Baker."  In closing, defense counsel argued that there was a high potential for inaccuracies in these reports because "an

agent . . . is cutting and pasting and is using the same forms every time." Defense counsel further explained:

> Everyone who testified is testifying about things that happened at least ten months ago, up to two years ago. They don't remember exactly what happened. They're relying on their reports. And the question is, are these reports, is this paperwork, so accurate, so trustworthy that it's proof beyond a reasonable doubt?

Though Martinez never directly refuted his date of removal at trial, and his counsel assumed during closing argument that the dates on the removal forms were correct, Martinez repeatedly questioned the accuracy of the documents in other contexts. The government even conceded the errors during its closing argument, stating, "Okay, there were some mistakes in the reports. It happens."

The evidence of mistakes in Martinez's immigration documents distinguishes this case from previous decisions in which we have held that a jury necessarily found beyond a reasonable doubt that the defendant's removal was subsequent to an aggravated felony conviction for purposes of 8 U.S.C. § 1326(b)(2). *See United States v. Calderon-Segura*, 512 F.3d 1104, 1111 (9th Cir. 2008); *United States v. Martinez-Rodriguez*, 472 F.3d 1087, 1092 (9th Cir. 2006). In those cases, the government failed to allege that the defendant's removal date was subsequent to an aggravated felony conviction, and the jury never made an express finding on that question. During sentencing, however, the court made the finding and applied the higher statutory maximum under 8 U.S.C. § 1326(b)(2). We nevertheless affirmed the

sentences, reasoning that the jury necessarily found that the removal date was subsequent to the convictions because the removal documents at trial listed only dates subsequent to the conviction date.

Here, defense counsel showed and the government conceded that Martinez's immigration documents contained mistakes, including at least one incorrect date. We cannot assume that the jury determined that everything on the documents was correct simply because it relied on those documents to conclude that Martinez previously had been removed. Indeed, it would have been rational for the jury to decide that the existence of numerous documents recording Martinez's removal indicated that the removal happened, but to nevertheless conclude that it could not rely on those documents for the accuracy of specific dates. This is especially true because such details are more susceptible to inaccuracies caused by actions like cutting and pasting from other documents.

* * *

There is no question that the jury's task in answering the special finding was simple: either the date of Martinez's removal was after December 3, 2010 or it was not. However, there is much cause to conclude that the finding was influenced by the court's error: the evidence of the documents' unreliability, the failure to instruct on the burden of proof, the court's misleading response to the jury note that effectively lessened the government's burden of proof, and the bare eight minutes that elapsed between the jury's note and its return of the guilty verdict with the removal date finding. We cannot say that the court's error was so unlikely

to affect the special finding that it was harmless beyond a reasonable doubt.

## V.

We hold that the court erred by responding to the jury note without consulting counsel, in violation of Rule 43(a) and the Sixth Amendment.  Furthermore, we hold that the court's error was not harmless beyond a reasonable doubt with respect to the jury's special finding.  Because that finding increased the statutory maximum sentence for which Martinez was eligible, we vacate Martinez's sentence and strike the special finding.  On remand, the government may elect to retry the removal date issue before a sentencing jury, or it may request that the district court resentence Martinez under the two-year sentencing provision in 8 U.S.C. § 1326(a).[7] *See United States v. Vera*, 770 F.3d 1232, 1253 (9th Cir. 2014).

However, the district court judge expressed views both during a pre-trial hearing and following his failure to consult counsel when he received the jury note that reasonably could lead the defendant to question the presence of bias.  Because we do not think that the district court judge would be able to put these views out of his mind and in order to preserve the appearance of justice, upon remand the Clerk of the United States District Court for the Southern District of California

---

[7]  We do not reverse Martinez's conviction because the jury was properly instructed on the charge and returned a guilty verdict unrelated to its special finding, which bore only on the statutory maximum sentence.

shall reassign this case to a different district court judge for further proceedings. *See United States v. Working*, 287 F.3d 801, 809 (9th Cir. 2002).

**VACATED; REMANDED.**